ELI B. AMES *vs.* THOMAS LOWRY and others.

March 9, 1883.

Deed—Description by reference to Unrecorded Plat—Parol Evidence to Identify Block in Such Plat with differently numbered Block in Subsequent Recorded Plat.—Prior to the recording of the plat of Minneapolis, H. conveyed to W. by this description: "All those tracts or parcels of land, lying and being in Minneapolis, county of Hennepin, described as follows, to wit: lots Nos. 6 and 7, in block No. 69, of Hanson's addition to Minneapolis; said block being the sixth from the quarter-section post at the land-office, between Second and Third streets, according to a plat of said town now in the office of said Wilcox." Subsequently lot 6, in block 128, of the town of Minneapolis, according to the recorded plat thereof, was sold on execution against the heir of H. *Held,* in ejectment for lot 6, in block 128, by one claiming under the deed of W. against others claiming under the execution sale, that it was competent for the plaintiff, in order to show lot 6, in block 128, to be the same land as lot 6 described in the deed to W., to prove that, before the date of that deed, H. had caused his land to be surveyed into streets, blocks, and lots, and had run out and established the lines of the same upon the ground in connection with surveys of adjacent lands, and had a plat of his survey, commonly referred to by him and others as Hanson's addition to Minneapolis; that at the date of the deed there was a plat of Minneapolis, which covered H.'s survey and surveys of the adjoining lands; that the subsequently recorded plat of Minneapolis substantially incorporated these surveys, the names of some of the streets being changed and the numbering of the blocks rearranged, but the location and sizes of blocks and lots, and numbering of lots, remaining the same; that block 69 of H.'s plat became block 128 on the recorded plat, and that the sixth block south-east from the quarter-section post, at the land-office, was block 128 of the recorded plat.

Plaintiff brought this action in the district court for Hennepin county to recover possession of "lot 6 in block 128, of the town, now city, of Minneapolis, according to the plat thereof now on file and of record in the office of the register of deeds within and for said county of Hennepin." A jury was waived and the action tried by *Vanderburgh*, J., who found the facts in substance as follows:

On April 23, 1855, one D. M. Hanson (the common source of title) pre-empted and purchased of the United States the E. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 26, town 24, range 29, in which the premises in dispute are situated, and which now forms part of the town-site of Minneapolis, and on July 17, 1855, he received his patent from the United States. Hanson, in contemplation that this land, with that of adjoining owners, would become a town-site, caused the tract, or a part of it, to be surveyed into lots, blocks and streets, and the lines of the survey to be run out and established upon the ground, in connection with the surveys of the adjacent lands. Maps or plats of these surveys were made, and so much of the same as included Hanson's land was commonly referred to and designated, by him and others, as Hanson's addition to Minneapolis. On June 13, 1855, there was a map or plat of Minneapolis, showing these surveys, with lots, blocks and streets, and among these streets thus laid out and surveyed was one then and still known as Washington avenue, which had been staked out and identified. Streets were surveyed parallel with this avenue, that lying next northeasterly and toward the Mississippi river being known and designated as Prospect street, and that next southwest of the avenue being known and designated as Second street, and that next Second street being known and designated as Third street. The United States land-office was then situated at the junction of Washington avenue and a cross street at right angles to it, and near the land-office was the quarter-post of the section, which was then plainly visible and was well known as a point of designation and description. The blocks were formed by the intersection of cross streets running at right angles with Washington avenue, and were 330 feet square, all the streets being 80 feet wide except Washington avenue; so that there was a tier of blocks, as thus surveyed, extend-

ing southeasterly from the land-office and the quarter-post. The survey extended for several streets southwesterly of Washington avenue, and more than six blocks southeasterly from the land-office. The blocks were marked distinctly by stakes set at the corners thereof.

Among the blocks in the Hanson tract was one bounded on the north-east by Second street, on the south-west by Third street, and on the south-east by Lake street, as these streets were designated in the map of Minneapolis, which was then in possession of one Carlos Wilcox who had an office in the land-office building, and was often used and referred to by Hanson in showing or making sales of lots. This block was marked and designated on this map as block 69, and was the sixth block southeasterly from the quarter-post, and as the streets and blocks were staked out, it was easily located. This block was divided into ten lots, each of 66 feet front by 165 feet deep, numbered from one to ten inclusive. Lot 6 in the block lay at the corner of Second and Lake streets (as they were then called) being 66 feet on Second street, and 165 feet on Lake street, and could then readily be located on the ground.

On June 13, 1855, Wilcox and Hanson visited this lot 6, and ascertained its situation, corners and boundaries, and on the next day Hanson, in consideration of $200, sold and conveyed it with the adjoining lot known as lot 7, by warranty deed, to Wilcox, the deed bearing date June 13, 1855, and purporting to be made between "D. M. Hanson and Sylvia, his wife, of Minneapolis, Hennepin county, territory of Minnesota, party of the first part, and Carlos Wilcox, of the same place aforesaid, party of the second part," and the description of the property conveyed being as follows : "All those tracts or parcels of land, lying and being in Minneapolis, county of Hennepin, described as follows, to wit : Lots number six (6) and seven (7) of block number sixty-nine of Hanson's addition to Minneapolis, said block being the sixth (6th) south-east from the quarter-section post at the land-office, situated between Second and Third streets, according to a plat of said town now in the office of said Wilcox." This deed was recorded in the registry of deeds of Hennepin county, on May 27, 1856. The map before mentioned, the court finds, from the evidence, to have been the one referred to in this deed.

Afterwards, by general consent and agreement of the different proprietors of the town of Minneapolis, a general map or plat of the town was made and filed about September, 1855. On this new map, the location, course and width of the streets through Hanson's tract, and also the lots and blocks in that tract, correspond with the beforementioned survey and map of Hanson, his original survey being substantially incorporated in the new map. The size of the lots and blocks, and the numbers of the lots, were the same on the new as on the old map, but in the new arrangement the names of the streets (except Washington avenue) were changed, and the numbering of the blocks was altered. Second street on the old map became Third street on the new, Third street became Fourth street, and what was block 69 on the old map became block 128 on the new and recorded plat, so that lot 6 in block 69 on the original map of Hanson, is identical with lot 6 in block 128 on the recorded plat—the premises in question.

D. M. Hanson died intestate in March, 1856, having made no other conveyance of lot 6, and leaving his father William Hanson as his sole heir. The plaintiff derives title through the foreclosure of a mortgage by Wilcox, executed and recorded October 23, 1855, in which the mortgaged premises are described as "lot 6 of block 128," etc. The defendants claim under William Hanson, as heir of D. M. Hanson, by virtue of an execution sale June 15, 1863, upon a judgment docketed February 16, 1859, against William Hanson, and a deed in 1870 from William Hanson.

At the trial the defendants objected and excepted to the admission of the extrinsic evidence introduced to identify the land described in the deed to Wilcox with that described in the complaint. In its conclusions of law the court held that this evidence was competent, and was not precluded by the reference to the Wilcox plat in the deed, and also held that the title passed by the deed to Wilcox, and that plaintiff was entitled to judgment. A new trial was refused, and the defendants appealed.

*Albert L. Levi* and *Thomas Lowry,* for appellants.

*Benton & Roberts,* for respondent.

GILFILLAN, C. J.* Ejectment for lot 6, block 128, of the town (now city) of Minneapolis. One Hanson, in June, 1855, was the owner of 80 acres, according to the governmental subdivision, which included the land in controversy, and executed to Carlos Wilcox a deed, duly recorded May 27, 1856, conveying land described as "all those tracts or parcels of land lying and being in Minneapolis, county of Hennepin, described as follows, to wit: lots Nos. six (6) and seven, (7,) in block No. sixty-nine, (69,) of Hanson's addition to Minneapolis; said block being the sixth (6th) from the quarter-section post at the land-office between Second and Third streets, according to a plat of said town now in the office of said Wilcox." In this deed the parties are described as "of Minneapolis, Hennepin county, territory of Minnesota." Plaintiff claims under this deed. Afterwards Hanson died, leaving one William Hanson his heir. In 1863, under a judgment and execution against the latter, lot 6, in block 128, being the land in controversy, was sold by the sheriff, and defendants, as purchasers in good faith, claim under that sale. Plaintiff claims that lot 6 in the deed to Wilcox is identical with lot 6 so sold on execution and claimed by defendants. On the trial the court below admitted, against defendants' objections, evidence to show the identity of lot 6 conveyed to Wilcox with the lot in controversy.

Parol evidence is, and must of necessity be, always admissible to identify the property described in and conveyed by a deed, to ascertain to what property the particulars of description in the deed apply. For this purpose, as against a subsequent purchaser from the same grantor, any fact going to show the identity may be shown, if the record of the deed be constructive notice of such fact. The record is constructive notice of any fact as to which it puts a party examining the state of the title upon inquiry, suggests the line of inquiry, and the existence of which will probably be ascertained by diligently following such inquiry. The deed to Wilcox sufficiently designates the place,—Minneapolis, county of Hennepin,—which, by referring to the description of the parties, is ascertained to have been in the territory of Minnesota. It appears, also, from the description

*Mitchell, J., because of illness, and Vanderburgh, J., having tried the case in the district court, took no part in this decision.

in the deed, that there had been a survey into lots and blocks of land in Minneapolis owned by Hanson, in which the lots conveyed were included, and which was called Hanson's addition to Minneapolis, and that there was then existing a plat of the town of Minneapolis, which probably covered the land of Hanson so surveyed. One examining the state of the title to land in Minneapolis about to be conveyed by Hanson, subsequent to the deed to Wilcox, could not be said to examine it with proper care if he did not inquire as to his survey, as to what land was included in it, how it was surveyed, and whether the blocks and lots were marked by monuments on the ground; nor if he did not inquire as to the said plat of the town of Minneapolis, to ascertain if it covered the land surveyed by Hanson, and how the blocks and lots of that survey were thereon designated; nor, if Hanson were offering to sell according to the recorded plat of Minneapolis, (recorded in September, 1855,) unless he examined that plat to ascertain how the designation of streets, blocks, and lots upon it corresponded with the plat in Wilcox's office at the date of the deed to him; nor without inquiring as to the location of the quarter-section post at the land-office, to ascertain what block by that plat was the sixth south-east from said quarter-section post, and what block in the recorded plat corresponded with that block.

All these inquiries are suggested by the items of description in the deed to Wilcox, except the comparison of the prior plats with the recorded plat, which would of necessity be suggested by an offer to sell according to that plat. It is to be presumed, there being nothing to raise a doubt upon it, that, had the inquiries thus suggested been followed with diligence, the facts would have been ascertained, which were these: That before the date of the deed to Wilcox, Hanson had caused his land, or a portion of it, to be surveyed into streets, blocks, and lots, had run out and established the lines of the same upon the ground in connection with surveys of adjacent lands, and had a plat of his survey which was commonly referred to by him and others as Hanson's addition to Minneapolis; that there was, at the date of the deed, a plat of Minneapolis, which covered Hanson's survey and the surveys of adjoining lands; that the recorded plat of Minneapolis substantially incorporated all these surveys, the names

of some streets being changed, and the numbering of the blocks rear-ranged, the sizes and location of blocks and lots, and the numbering of the lots, remaining the same; that block 69 on Hanson's plat became block 128 on the recorded plat; and that the sixth block south-east from the quarter-section 'post at the land-office is 128 on the recorded plat; and that lot 6 in that block is identical with lot 6 in block 69 on the plat of Hanson's addition. Evidence of these facts, the deed being constructive notice of them, was properly admitted.

Evidence that Hanson pointed out to Wilcox on the ground the lots intended to be conveyed, was incompetent, for the deed was no notice of that fact. But the identity of the lot was fully established by uncontroverted competent evidence, and the admission of the incompetent evidence could not have affected the result. The error must, therefore, be disregarded.

Order affirmed.