[No. 3098. Decided July 19, 1899.]

JOHN SENGFELDER, *as Administrator, et al., Respondents,* v. HENRY HILL *et al., Defendants,* LOUIS I. OSTROSKI *et al., Appellants.*

DEED—UNCERTAINTY IN DESCRIPTION—CONSTRUCTIVE NOTICE.

When an intending purchaser finds a deed of record, good on its face, made by a common grantor, he cannot with impunity ignore it because he fails to find of record any property to which the given description is applicable, but he must inquire outside of the record whether or not there was at the time the deed was made property to which the description can be applied, and, if he fails to so inquire, and such deed afterward proves to affect property he has purchased, he must be held to be a purchaser with constructive notice.

SAME—WHEN BONA FIDE PURCHASER PROTECTED BY RECORD TITLE.

The act of March 9, 1891 (Bal. Code, § 4544), which provides that whenever any person having in his name the legal title of record to any real estate, a deed of such real estate from the person holding the legal record title to a *bona fide* purchaser shall be sufficient to vest in such purchaser the full legal and equitable title, free and clear of all claims of any persons not appearing of record, is restricted by its title to the protection of innocent purchasers of community property only.

CONSTRUCTIVE NOTICE—WHEN RECORDED INSTRUMENT INSUFFICIENT.

The recording of a mortgage, executed in favor of a stranger to the title, and which on its face in no way discloses the interest of the mortgagors therein, is not constructive notice of any equitable interest they may hold.

EJECTMENT—WHEN LEGAL PREVAILS OVER EQUITABLE TITLE.

In an action of ejectment, plaintiff's equitable title, of which defendant had no actual or constructive notice, cannot prevail over a valid legal title held by the latter.

SAME—PERMANENT IMPROVEMENTS—WHO ENTITLED TO VALUE OF.

Where real property is recovered in an action of ejectment, permanent improvements placed thereon, in good faith, by the defendant or those under whom he claims, follow the land, and, under Bal. Code, § 5511, defendant is not entitled to recover the value thereof, but is merely entitled to set-off the value thereof at the time of trial against such damages as the plaintiff may be entitled to for the withholding of the property.

APPEAL—ASSIGNMENT OF ERRORS.

Errors not assigned by appellant in his brief will not be considered on appeal.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge. Decree modified.

*A. G. Avery* and *Blake & Post,* for appellants:

Constructive notice given by record must be understood to be only such notice as the purchaser would obtain from an actual examination of the records of which he is charged with notice. A description in a deed which is indefinite, uncertain and ambiguous, or which so defectively describes the property that it cannot be located from the records alone, is of no force and effect as to subsequent purchasers. Such a recorded deed, although it might be reformed between the original parties, is not notice to subsequent purchasers. *Stewart v. Huff,* 19 Iowa, 557; *Bailey v. Galpin,* 41 N. W. 1054; *Stead v. Grosfield,* 34 N. W. 871; *Shepherd v. Burkhalter,* 58 Am. Dec. 523; *Heister's Lessee v. Fortner,* 4 Am. Dec. 417; *Frost v. Beekman,* 1 Johns. Ch. 288; *Ritchie v. Griffiths,* 1 Wash. 429 (22 Am. St. Rep. 155, 12 L. R. A. 384); *Gilchrist v. Gough,* 30 Am. Rep. 250; *Taylor v. Harrison,* 26 Am. Rep. 304; *Parret v. Shaubhut,* 80 Am. Dec. 424; *Bishop v. Schneider,* 2 Am. Rep. 533; *Pringle v. Dunn,* 37 Wis. 449 (19 Am. Rep. 772); *Nelson v. Wade,* 21 Iowa, 49; *Shoemaker v. McMonigle,* 86 Ind. 421; *Buck v. Axt,* 85 Ind. 512; *Craven v. Butterfield,* 80 Ind. 503; *Stiles v. Japhet,* 19 S. W. 450.

A satisfied or canceled mortgage is notice of nothing. *Etzler v. Evans,* 61 Ind. 56; *Crofut v. Wood,* 3 Hun, 571; *McCabe v. Grey,* 20 Cal. 510; *Openheimer v. Robinson,* 27 S. W. 95; *Mead v. Bunn,* 32 N. Y. 277; Wade, Notice, §§ 208, 209, 214. A mortgage given by one without title affords no constructive notice. 1 Devlin, Deeds, § 724; 1 Jones, Mortgages, § 576; *Tarbell v. West,* 86

N. Y. 280; *Ford v. Unity Church Society,* 41 Am. St. Rep. 711 (23 L. R. A. 561).

*W. J. Thayer,* for respondents:

Appellants contend that these mortgages were not notice because at the time they were given Charles and Alice Carson were not the owners of the lands mortgaged. Conceding for the purpose of argument that the title did not pass until after Alice's death, still the record of all these mortgages was sufficient to put intending purchasers upon inquiry. *Doran v. Dazey,* 64 N. W. 1023 (57 Am. St. Rep. 550); *Pleasants v. Blodgett,* 58 N. W. 423; *Van Diviere v. Mitchell,* 45 S. C. 127; *Coleman v. Reynolds,* 37 Atl. 543; *Clark v. Holland,* 33 N. W. 350 (2 Am. St. Rep. 230); *Pillow v. Southwest Virginia Imp. Co.,* 23 S. E. 32 (53 Am. St. Rep. 804).

The opinion of the court was delivered by

FULLERTON, J.—This is an action brought to recover the possession of certain real property situate in the city of Spokane, and described by the lower court in its findings of fact as follows:

" Parts of lot four (4) and five (5) in block twenty (20) of the resurvey and addition to Spokane Falls (now city of Spokane), state of Washington, and particularly described as follows, to-wit: Commencing at the southwest corner of said lot five (5), running thence north with the west line of said lot five, sixty (60) feet, thence east ninety and twenty-three one-hundredths (90.23) feet, thence south sixty feet, to the north line of Sprague street, thence west along said north line of Sprague street ninety and twenty-three one-hundredths (90.23) feet to the place of beginning."

This land, along with other lands, was patented by the government of the United States to James N. Glover on April 5, 1878. At that time the county of Spokane had

not been organized, but formed a part of the county of
Stevens, the county seat of which was at Colville, now the
county seat of Stevens county, as at present organized.
In the spring of 1878 Glover caused a part of the lands
included within his patent to be marked out on the ground
into lots and blocks, and a plat to be made of the same,
which plat he left with one Rymer, a surveyor, with in-
structions to forward it to Colville for the purpose of hav-
ing it placed of record. This plat was never recorded; a
fact unknown to Glover until some time afterwards, who
proceeded to sell and convey certain of the lots and blocks
so platted, describing them in accordance with the numbers
of the unrecorded plat. In September, 1879, Glover con-
veyed to one A. M. Cannon and one J. J. Browne each an
undivided one-fourth interest in his original land claim,
reserving certain parts thereof described by metes and
bounds, and certain other parts described by number ac-
cording to the unrecorded plat. After the discovery that
the original plat had not been recorded, Glover, Cannon,
and Browne caused the town-site to be resurveyed, and a
plat thereof to be made and recorded under the title of
"Resurvey and Addition to Spokane Falls, Spokane
County, Washington Territory," properly dedicating the
streets and alleys thereon to the public use. This resurvey
and addition followed very closely the original survey;
the lots and blocks upon the old plat being numbered the
same and being of the same size as the original plat, save
that along the south boundary a strip was cut off the tier
of lots for the purpose of forming a street, called "Sprague
Avenue" in the plat of the resurvey. In this resurvey a
discrepancy in the measurement was discovered. It was
found that the blocks and lots were slightly larger than the
original measurement made them.

As originally conveyed, the tract in dispute formed
three several parcels, which counsel have designated as

tracts "A," "B," and "C," for convenience of reference. Briefly, tract A is the north half of the south sixty feet of lot five, tract B is the south half of the south sixty feet of lot five, and tract C is the south sixty feet of the west half of lot four; their relative locations being shown upon the following diagram:

C. W. Carson, the guardian of the minor respondents, is shown by the record to have been married four times. His first wife was Mary Pelham, whom he married in 1881, but as the title to no part of the property is affected by this marriage the record is silent as to any other fact concerning her. His second wife, Matilda Lind, he married November 17, 1883; she died without issue in February, 1884, leaving as her sole heirs her husband, C. W. Carson, and her father and mother, Carl and Charlotta Peterson. On September 14, 1884, he married Alice Pel-

ham, with whom he lived until her death on March 10, 1889. To this marriage were born two children, Hazel Bellam Carson and Roy Edward Carson, the minor respondents in this action. After the death of Alice, and prior to December 9, 1889, he married his present wife, Mary. On May 4, 1878, subsequent to the making of the original plat, but prior to the time of the resurvey, Glover and wife conveyed to one F. H. Cook tracts A and B, with the balance of lot five, describing the land as follows: "Lot five (5), block twenty (20), situated in Spokane Falls, Stevens Co., Wash. Ty., Township Twenty-five, (25), North Range forty-three (43) East." Cook and wife on December 15, 1883, subsequent to the recording of the plat of the resurvey and addition, conveyed tract A to one E. H. Boyer, describing it by metes and bounds; using, however, the numbers of the lot and block to determine the initial point. Boyer conveyed the tract to C. W. Carson on September 29, 1886, at which time the marriage relation existed between Carson and his third wife, Alice. On September 3, 1889, after the death of Alice, Glover made a quit claim deed of tract A to C. W. Carson; and on March 1, 1893, Carson and his present wife, Mary, conveyed the tract by warranty deed to the defendants Ostroski, Breslauer, and Wise, who now claim to own the same.

Tract B was conveyed from Glover to Cook by the deed of May 4, 1878, and from Cook to H. P. Reeves on October 6, 1883, and from Reeves to C. W. Carson November 5, 1883. On November 17, 1883, Carson deeded this tract to Matilda Lind as a wedding present, marrying her on the same day. On the death of Matilda the land descended, one half to C. W. Carson and the other half to Carl and Charlotta Peterson. The Petersons conveyed their interests to C. W. Carson by deed dated October 25, 1889, about seven months after the death of Alice. This

tract was included in the quit claim deed from Glover to Carson of September 3, 1889, and was conveyed with tract A to Ostroski, Breslauer, and Wise by the deed of May 1, 1893. It was further shown that, during the lifetime of Alice, Carson entered into a verbal contract for the purchase of the interests of the father and mother of his wife Matilda in tract B, on which he paid $1,000, and gave a mortgage to one W. C. Jones, the attorney representing the Petersons, for $4,000 more, to secure the balance of the purchase price. This mortgage was placed of record, though canceled thereon long prior to the time the appellants purchased the property. Carson testifies that at the time the mortgage was given a deed to that tract of land had been made from the Petersons to him, which, being defectively executed, was not accepted, but was returned to the Petersons, who were then somewhere in Sweden, and that the deed received after Alice's death was intended to correct the defective execution of the former one; that he subsequently paid the balance of the purchase price represented by the mortgage, but paid it out of the moneys earned while his wife Alice was alive, and which was the common property of himself and the minor respondents in this action.

Tract C was adjudged by the lower court to be the property of the defendants Ostroski, Breslauer, and Wise, and, as no appeal is taken from that part of the judgment, it requires no further consideration.

It is conceded here, and was found by the court below, that Ostroski, Breslauer, and Wise, at the time they purchased the property, had no actual notice that the plaintiffs in this action, or either of them, had, or claimed to have, any right, title, interest or estate in the property in question, or notice of any kind further than is imparted by the records.

The cause was tried in the lower court without the intervention of a jury; and on June 4, 1898, the court entered

judgment adjudging the defendants Ostroski, Breslauer, and Wise the owners of the entire tract C, of an undivided three-fourths of tract B, and of an undivided one-half of tract A, and adjudged the minor respondents to be the owners of the balance. From that portion of the judgment adjudging the minors to be the owners of a part of the property, this appeal is taken.

1.   In deraigning the title to tract A, the lower court found that the deed from Glover and wife to Cook conveyed to Cook the title of the Glovers; that the subsequent deeds from Cook to Boyer and from Boyer to Carson, conveyed such title to Carson; that, Carson having acquired the title during his marriage with Alice, the property on Alice's death descended one half to Carson and the other half to their minor children, Hazel Bellam Carson and Roy Edward Carson; and that this title was not divested by the subsequent deed of May 1, 1893, from Carson and his wife Mary to the appellants Ostroski, Breslauer, and Wise. The appellants, on the other hand, contend for the other line of title, viz., the quit claim deed from Glover to Carson of September 2, 1889, which was executed nearly six months after the death of Alice, and the deed from Carson to them of May 1, 1893, ignoring the conveyances through which the court traced the title to the Carsons prior to Alice's death. They contend that, inasmuch as they had no actual notice of any claim or right possessed by these minors in this property, they cannot be subjected to such rights, because these deeds were insufficient to furnish them with constructive notice. The argument is that the deeds are void for uncertainty in description.

To render a deed void for uncertain description, there must be either a fatal infirmity in the description, appearing on the face of the instrument, or an inability to apply the given description to any particular property. When

the objection to the description is made upon the first ground, its sufficiency is determined by an inspection of the deed itself, without ulterior inquiry. But, before a deed will be declared void for the latter reason, all sources of inquiry which the description itself and the circumstances surrounding the parties and the conditions existing at the time of its execution naturally suggest must be exhausted in a vain effort to locate the property. Parties making a conveyance are presumed to make it with reference to the state or condition of the premises at the time, and, if the description be sufficient when made, no subsequent changes in conditions can make it invalid. Hence, when an intending purchaser searches the records to ascertain the state of the title, and finds a deed of record, good on its face, made by a common grantor, he cannot with impunity ignore it simply because he fails to find of record any property to which the given description is applicable, but must inquire outside of the record whether or not there was at the time the deed was made property to which the description can be applied, and whether the deed conflicts with the title to the property he intends purchasing. If he fails to so inquire, and such deed afterward proves to affect property he has purchased, he must be held to have purchased with constructive notice. In *Rucker v. Steelman,* 73 Ind. 396, it is said:

"It is not the office of a description to identify the premises, but to furnish the means by which they can be identified."

In *Ames v. Lowry,* 30 Minn. 283 (15 N. W. 247), it is said:

"Parol evidence is, and must of necessity be, always admissible to identify the property described in and conveyed by a deed, to ascertain to what property the particulars of description in the deed apply. For this purpose, as against a subsequent purchaser from the same grantor, any fact going to show the identity may be shown, if the record

of the deed be constructive notice of such fact. The record is constructive notice of any fact as to which it puts a party examining the state of the title upon inquiry, suggests the line of inquiry, and the existence of which will probably be ascertained by diligently following such inquiry."

In *Wiley v. Lovely,* 46 Mich. 83 (8 N. W. 716), the description was,

"All that certain piece or parcel of land lying and being in the village of Fowlerville, county of Livingston and state of Michigan, and more particularly known and described as follows, to-wit: village lot number seventy-seven (77) of the original plat of the village of Fowlerville, as duly laid out, platted, and recorded in the office of the register of deeds for said county of Livingston."

The first plat of the village, which was of record, only designated twenty-nine lots, marked from one to twenty-nine, and contained no lot numbered seventy-seven. Another plat was found in the record, but it was not so executed as to entitle it to be recorded. This plat contained the lot designated as seventy-seven, but the register, in transcribing it, marked it by mistake as seventy-eight, and hence his copy represented two adjoining lots as respectively lot seventy-eight. It was contended that, as the lawful record contained no lot seventy-seven, the property the grantor assumed to convey never had any existence. In passing upon this objection, the court said:

" The grant was not impaired by the omission to record the plat, and it was competent to identify the parcel by parol evidence. . . . It is often necessary to resort to such evidence for the purpose of applying the deed to the subject-matter. That part of the description which speaks of the registry of the plat, and is found incorrect, may be rejected without any detriment. . . . Enough is left to satisfy all legal requirements."

In *Smiley v. Fries,* 104 Ill. 416, SCHOLFIELD, J., says:
" This court has ruled that any description by which the property might be identified by a competent surveyor

with reasonable certainty, either with or without the aid of extrinsic evidence, is sufficient."

*Hicklin v. McClear,* 18 Ore. 126 (22 Pac. 1057), was an action in ejectment to recover lots 1 and 2, block 3, of the town of Brookland. The defendant claimed title to the premises by deed through mesne conveyances from the donee of the tract of the United States. Certain of these conveyances described the premises as lots 1 and 2 of block 3 in the town of "Brooklyn," and the records did not show that a plat of any such town had been filed of record. They did, however, show that a plat of the town of "Brookland" had been filed and recorded. In that action it was held competent to show by parol that the town of "Brookland" was commonly called the town of "Brooklyn." THAYER, C. J., who delivered the opinion of the court, said:

" In case of a deed to real property, it has always been competent to prove the facts and circumstances surrounding the transaction, in order to ascertain the premises intended to be conveyed. The evidence, therefore, as to what Tibbits did in platting the town-site, and in selling lots therein, of there being two plats, and of their similitude in fact, was eminently proper, and the objections thereto must be regarded as highly technical. Nor did it matter anything whether such plat was ever acknowledged or filed for record; its contents could be proved by parol testimony in event of its loss or destruction."

See, also, *House v. Jackson,* 24 Ore. 89 (32 Pac. 1027); *Kretschmer v. Hard,* 18 Colo. 223 (32 Pac. 418); *Blake v. Doherty,* 5 Wheat. 359; *Hardy v. Matthews,* 38 Mo. 121; *Cox v. Hart,* 145 U. S. 376 (12 Sup. Ct. 962).

Looking to the face of the deed from Glover to Cook, there is clearly a sufficient description. It also plainly suggested the inquiry whether or not at the time it was made there was a lot and block situate in Spokane Falls to which the description might apply. At the trial evidence of such

fact was produced; the grantor in the deed, who, it appears, has continuously resided in Spokane since the conveyance was made, testifying clearly and unequivocally to such fact, and to the further fact that it was the same lot and block designated by like numbers on the plat which was of record at the time the appellants purchased. Again, this recorded plat suggested the existence of a previous survey. It was called the "Resurvey and Addition" to Spokane Falls—a name clearly pointing to the fact that there had been a previous survey and marking of the land covered in part by it. The subsequent deeds, from Cook to Boyer and from Boyer to Carson, were directly in the line of title, and were made subsequent to the plat of the resurvey. The first of these deeds refers in terms to the recorded plat, the second to the streets as named upon the recorded plat, and both describe the property with as much certainty as the quit claim deed from Glover to Carson, on which the appellants rely. With so much on the face of the record, it would seem that the appellants could not successfully claim to be purchasers without notice, had they made inquiry and failed to discover that the deed from Glover to Cook conveyed the property which they subsequently purchased. Much less can they so claim where the record fails to show, as in the present case, that any inquiry was made to ascertain the facts.

" The true doctrine on this subject is that, where a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered as a *bona fide* purchaser." *Williamson v. Brown,* 15 N. Y. 354.

The appellants claim protection under the first section

of the act of the legislature of March 9, 1891 (Session Laws 1891, p. 368). That section reads as follows:

" Whenever any person, married or single, having in his or her name the legal title of record to any real estate, shall sell or dispose of the same to an actual *bona fide* purchaser, a deed of such real estate from the person holding such legal record title to such actual *bona fide* purchaser shall be sufficient to convey to, and vest in, such purchaser the full legal and equitable title to such real estate free and clear of any and all claims of any and all persons whatsoever, not appearing of record in the auditor's office of the county in which such real estate is situated."

Conceding that this section has the broad effect contended for by the appellants, it would still be insufficient to protect them in their purchase of tract A. The protection is granted to a *"bona fide* purchaser," which is almost universally construed to mean a purchaser without notice or knowledge of an outstanding superior title. See cases collected in Devlin on Deeds (2d ed.), § 725. Aside from this, an examination of the act will show that the legislature intended by it to protect *bona fide* purchasers of community property only. The title of the act is, "An act to protect innocent purchasers of community real property," which, under § 19 of article 2 of the state constitution, is too narrow to include within the terms of the act property held by a title other than that specially mentioned. *Howlett v. Cheetham,* 17 Wash. 626 (50 Pac. 522); *Anderson v. Whatcom County,* 15 Wash. 47 (45 Pac. 665); *State v. Halbert,* 14 Wash. 306 (44 Pac. 538).

We conclude, therefore, that as to tract A the judgment of the lower court was right.

2.  As to tract B, we think the lower court was in error. Carson originally acquired this tract on November 5, 1883, at which time he was a widower. On November 17, 1883, as before stated, he gave a deed of the tract to his second wife, Matilda Lind, as a wedding present. Matilda died

without issue in the spring of 1884. The property, being her separate property, descended, under the statutes, one half to C. W. Carson, and one half to her father and mother, Carl and Charlotta Peterson. The part inherited by Carson became, of course, his separate property. The other part was deeded to Carson by the Petersons October 25, 1889, seven months after the death of Carson's third wife, Alice, the mother of the infant respondents. The judgment of the court was based upon the facts hereinbefore recited, that Carson during the lifetime of his wife Alice had entered into a contract with the Petersons for the purchase of this land, and had paid a part of the purchase price. But this contract could at most give to C. W. and Alice only an equitable interest in the lands, which is all that the minors would take as heirs of their mother. It being conceded that the appellants Ostroski, Breslauer, and Wise at the time of their purchase had no actual notice of this contract, or any knowledge as to the manner in which it was acquired by Carson, other than what appeared on the records, and as the records showed the legal title to have been acquired by Carson after the death of Alice, they were entitled to rely upon that record, and took the title free from the equitable interest that the minor plaintiffs had as heirs of their mother. At common law an action of ejectment would not lie upon an equitable title. While this has been modified by statute to the effect that either party to the action may now set up the nature of his estate, whether legal or equitable, and that the superior title, whether legal or equitable, will prevail, it has never been held that an equitable title, of which a purchaser had no notice, would be allowed to prevail over a valid legal title purchased by him. This doctrine is clearly stated by Mr. Pomeroy in his work on Equity Jurisprudence. He says:

"Section 739. In applying the doctrine of *bona fide* purchase—and this is the very essence of the doctrine—

equity does not intend to pass upon and decide the merits of the two litigant parties; it does not decide that the title of the defendant is valid, and therefore intrinsically the better and superior to that of the plaintiff. On the contrary, the protection given by way of defense theoretically assumes that the title of the purchaser is really defective as against that of his opponent; at all events, the court of equity wholly ignores the question of validity, declines to examine into the intrinsic merits of the two claims, and bases its action upon entirely different considerations. If a plaintiff, holding some equitable interest of right, sues to enforce it against a defendant who has in good faith obtained the legal estate, the court simply refuses to interfere and do an unconscientious act by depriving him of the advantage accompanying such an innocent acquisition of the legal title. On the other hand, if the plaintiff is the legal owner, and sues to obtain some equitable relief against a defendant who is the innocent holder of some equitable estate or interest, the court in like manner simply refuses to do an unconscientious act by giving any aid to the plaintiff, but, without at all deciding or even examining the intrinsic merits of their claims, leaves him to whatever rights would be recognized and whatever reliefs granted by a court of law. It is thus seen that the doctrine of *bona fide* purchaser as administered by equity is not in any sense a rule of property. . . ."

" Section 740. Such being the *rationale* of the doctrine, it remains to consider the general extent and limits of its operation; and this chiefly involves the question, To what kinds of estates held by the *bona fide* purchaser will it be applied? It has never been doubted that the protection will be extended to the defendant in a suit brought by the holder of a prior equitable estate or interest against the subsequent *bona fide* purchaser of a legal estate, who acquired such estate at the time of and by means of his original purchase. . . ."

" Section 767. In the first place, it is the very central portion of the doctrine, to which all others have been additions, that where the defendant acquired the legal estate

at the time and as a part of his original purchase, the fact of his purchase having been *bona fide* for value and without notice is a perfect defense in equity to any suit brought by the holder of a prior equitable estate, lien, encumbrance, or other interest, seeking either to establish and enforce his equitable estate, lien, or interest, or to obtain any other relief with respect thereto which can be given by a court of equity.   .   .   . "

It is contended by counsel for the minor respondents that the mortgage made by C. W. and Alice Carson to W. C. Jones was sufficient to put a purchaser from Carson on his inquiry as to what interest C. W. Carson and Alice Carson had in the property at the time the mortgage was given; and, if the appellants had so inquired, it is argued, they would have discovered this contract of purchase. As before stated, this mortgage was canceled shortly after Carson received a deed to the property, and, had it been made directly to the Petersons, it may be doubted whether it would amount to constructive notice after its cancellation of record. But the mortgage was not made to the Petersons; the payee was W. C. Jones, an absolute stranger to the title. Neither did the mortgage recite that it was given for the purchase price of any part of the land, or purport to be anything more than security for a debt owing from the Carsons to W. C. Jones. Such a mortgage cannot be constructive notice of the fact that C. W. and Alice Carson had entered into a contract for the purchase of an undivided one-half interest in the land covered by the mortgage from Carl and Charlotta Peterson. To so hold is to carry the doctrine of constructive notice beyond all reasonable limits.

3.   By way of further and separate answer, the appellants allege that C. W. Carson, in order to improve the property in dispute and make it income bearing, and in good faith believing himself to be the owner in fee simple of said property, erected a building upon the same at a

cost of $60,000; that, in order to obtain money for such purpose, he was obliged to borrow, and did borrow, the sum of $36,000, on December 9, 1889, and gave as security therefor his own promissory notes and a mortgage upon all of said real estate; that said mortgage was a lien upon the property at the time the defendants Ostroski, Breslauer, and Wise purchased the same, and that they assumed said mortgage as a part of the purchase price; that they afterwards paid said mortgage by paying $6,000 in cash directly from their own funds and borrowing $30,000 from The Spokane Eastern & Trust Company, giving their mortgage to secure the same upon the entire tract; that The Spokane Eastern & Trust Company afterwards assigned said mortgage to the Traveller's Insurance Company, who now own the same; and that said mortgage is unpaid and uncanceled. They further allege that the building so erected was a substantial betterment of the property, and the only thing that makes it income bearing; that the interest of the minors was acquired prior to the erection of said building and while the land was unimproved, and, if for any reason whatever the court should hold that the minors have any interest in said property, that said interest ought in equity to be subjected to a lien for the amount of moneys expended in the erection of said building. They also allege that they have paid taxes upon said property in certain sums, and that this, also, ought to be declared a lien, and the property ordered sold for the purpose of paying such lien, inasmuch as it cannot now be partitioned; and they ask that the court adjudge accordingly. The lower court refused to allow for the improvements further than to offset the same against any damages the respondents might be entitled to by reason of having been ousted from possession of their interest in the property, but allowed the appellants a lien for the proportionate share of taxes that ought to have been paid by the

minor respondents, and which were paid by appellants
during the time they had possession of the property.  To
that part of the judgment refusing to make a proportionate
share of the value of the improvements a charge upon the
part adjudged to belong to the minors, the appellants ex-
cepted, and assign it as error here.

In ejectment at common law no allowance could be made
for permanent improvements put upon the land by a per-
son while in the wrongful possession of the same; though
in the consequential action of trespass for mesne profits
permanent improvements were generally allowed to be
shown in mitigation of damages.  The inequity of the rule,
as applied to all cases, has always been felt by the courts,
and in some cases it has not been followed.  For example,
Mr. Justice STORY, in *Bright v. Boyd,* 1 Story, 478, 2
Story, 605, held the broad doctrine, that

"A *bona fide* purchaser for a valuable consideration,
without notice of any defect in his title, who makes im-
provements and meliorations upon the estate, has a lien
or charge thereupon for the increased ·value which is
thereby given to the estate beyond its value without them,
and a court of equity will enforce the lien or charge against
the true owner, who recovers the estate in a suit at law
against the purchaser."

See, also, *Blodgett v. Hitt,* 29 Wis. 169.

An examination of this class of cases, however, will
show that they usually contained other equitable features,
which in themselves must have strongly influenced the
decision.  Generally the courts have not gone so far.  The
true rule, we think, is stated by Mr. Sutherland (Suther-
land on Damages, 2d ed., § 999), where he says:

" The owner is not compelled to pay for improvements
as a condition on which he may regain possession of his
property.  The improvements when annexed to the land
become part of the freehold.  But a *bona fide* occupant is
entitled to have them taken into account in ascertaining

whether the owner has sustained damages or not, both in the case where such improvements were made by him and where they were made by one whose title he has purchased. In such case the defendant should be allowed the value of lasting and valuable improvements reasonably necessary for the enjoyment of the premises, made in good faith, that is, in belief of his title and without notice of the real owner's claim to the extent of the rents and profits due to such owner. . . . The compensation allowed at common law for improvements was a mere equitable defense in mitigation of damages. Now very generally this defense, or the right of a *bona fide* occupant to compensation for improvements, is defined and regulated by statute; and where it is so defined and regulated the party claiming such compensation must bring himself within the statute. It is not the policy of these statutes that the owner of property shall be improved out of his title by volunteers or wrong-doers. Hence, such statutes, being in derogation of the common law, are strictly construed, and allow a recovery for improvements 'only in excess of the clear annual value of the premises during the time the occupant was in possession (exclusive of the use by the tenant of the improvements thereon made by himself or those under whom he claims), and only to the extent and upon clear and full proof of the amount to which the value of the premises is actually increased thereby at the time of the assessment.' "

Such, also, is the rule of our statute. Section 5511, Bal. Code, provides:

" The plaintiff shall only be entitled to recover damages for withholding the property for the term of six years next preceding the commencement of the action, and for any period that may elapse from such commencement to the time of giving a verdict therein, exclusive of the use of permanent improvements made by the defendant. When permanent improvements have been made upon the property by the defendant, or those under whom he claims holding under color of title adversely to the claim of the plaintiff, in good faith, the value thereof at the time of trial shall be allowed as a set-off against such damages."

In *McInerney v. Beck,* 10 Wash. 515 (39 Pac. 130), we held that this section only permitted the value of the improvements to be set-off as against damages for detention, and such seems to us now to be its proper construction. The case of *Leake v. Hayes,* 13 Wash. 214 (43 Pac. 48, 52 Am. St. Rep. 34), may seem at first glance to be in contravention of this principle, but a more careful reading of the case will show that the court did not intend to depart from the rule announced in the case last cited.

4. The appellants also complain in their argument that the lower court refused to direct a partition of the lands; and they ask this court, in case we should decide that the infant heirs have any interest in any part of the property, to direct a judgment of partition, or rather a sale of the premises, inasmuch as the lower court found that the premises in their present condition could not be divided. But this seems not to have been included in the assignments of error, and, under the authority of *Haugh v. Tacoma,* 12 Wash. 386 (41 Pac. 173), and *Doran v. Brown,* 16 Wash. 703 (48 Pac. 251), cannot be considered here.

The cause will be remanded to the court below, with instructions to modify its judgment by adjudging that neither of the respondents is the owner of, or entitled to the possession of, any part of tract B, and that the appellants Ostroski, Breslauer, and Wise are the owners in fee simple and entitled to the possession of the whole thereof, modifying the remainder of the judgment to conform therewith. In other respects the judgment will be affirmed.

GORDON, C. J., and REAVIS, ANDERS and DUNBAR, JJ., concur.