[No. 7659.  *En Banc.*  November 4, 1909.]

## J. B. CORDINER, *Appellant,* v. A. J. DEAR *et al., Respondents.*[1]

STATUTES—CONSTRUCTION—"PASSAGE OF ACT."  The proviso to Laws 1907, p. 398 (for the limitation of actions to set aside a tax deed), that the act shall not apply to certain actions if commenced within one year "after the passage of the act," has reference to the time when the act received the final sanction necessary to constitute it a law, and not to the time when the law went into effect, ninety days after the adjournment of the legislature; since there is no reason to give any technical or other than the ordinary meaning to the words (RUDKIN, C. J., DUNBAR, MOUNT, and MORRIS, JJ., dissenting).

Appeal from a judgment of the superior court for Chelan county, Steiner, J., entered July 14, 1908, upon sustaining a demurrer to the complaint, dismissing an action to recover real property and to vacate a tax deed.  Affirmed.

*Cordiner & Cordiner* and *J. C. Kleber,* for appellant.

*Reeves & Reeves,* for respondents.

FULLERTON, J.—This action was brought to recover possession of certain lands situated in Chelan county which had theretofore been sold for delinquent taxes, and to set aside and cancel the deed of the county treasurer issued to the purchaser at such sale.  The land was sold at a tax foreclosure sale held in May, 1901, and the deed was issued on May 22, 1901.  The present action was commenced on April 6, 1908, or nearly seven years after the issuance of the deed.  In his complaint the appellant attacked the foreclosure and sale on the ground that it was void for want of jurisdiction over the person of the then owner of the property, alleging that the attempted service of summons upon him, which was made by publication, was so far irregular as to render it void.  To the complaint a demurrer was interposed, which the court sus-

[1]Reported in 104 Pac. 780.

tained. The appellant thereupon elected to stand on his complaint, when judgment of dismissal and for costs was entered against him.

The principal contention of the parties on this appeal, and the only one we have found it necessary to notice, is over the statute of limitations. The right of action was adjudged to be barred by the act of March 15, 1907. That act consists of one section and reads as follows:

"Section 1. Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county, or municipal taxes, or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer's deed: Provided, This act shall not apply to actions not otherwise barred on deeds heretofore issued if the same be commenced within one year after the passage of this act." Laws 1907, p. 398.

By returning to the dates above given it will be observed that the action was begun more than one year after the passage of the act, if by the term passage be meant the time when the act was actually passed by the legislature, but less than one year if by that term be meant the time when the act went into effect, which, as it had no emergency clause, was ninety days after the adjournment of the legislature, or June 12, 1907. The determination of the meaning of the term, therefore, is the principal inquiry here.

The primary rule of construction of statutes, it will be remembered, is to ascertain and give effect to the intent of the lawmaker. The intent will govern when ascertained, even though it be inconsistent with the strict letter of the statute. But in ascertaining the intent, words are first given their plain, natural and ordinary meaning, and if when this is done the act as a whole has purpose and effect, and squares with the object the legislature evidently intended to accomplish, interpretation has accomplished its purpose, and the meaning and intent of the act has been discovered. It is only when to give to the words of the act their plain, natural, and

ordinary meaning, the act fails of its purpose, or becomes nugatory, that technical and secondary meanings of the words used may be resorted to.

In the case at bar there is nothing in the act itself that requires a resort to technical or secondary meanings of the words used to give the act meaning and effect. The legislature was fixing a time beyond which an action to recover land sold for delinquent taxes could not be prosecuted. As to cases arising in the future, or cases which then had a considerable time to run, a plain provision to the effect that the action must be brought within three years from the time the action accrued was amply sufficient. But there was another class of rights of action that could not be thus provided for, rights of action which had accrued three years and more prior to the time the legislature acted. These could not be cut off absolutely; it was necessary, in order that the limitation have effect as to them, that their possessors be given a reasonable time within which to begin such an action. Purpose and effect, therefore, are given to this act in its entirety, no matter which of the interpretations before suggested is given to the phrase "passage of this act." If the one be adopted, the possessors of rights of action then three years old and more had some nine months after the act went into effect within which to bring actions thereon, while if the other interpretation be given it they had one year, and either length of time is a reasonable time within the rule forbidding the cutting off of accrued rights of action without giving the possessors of such rights a reasonable time within which to commence actions thereon. So, we repeat, it is not necessary to depart from the plain, usual and ordinary meaning of the words used in the act in order to give it the effect intended by the legislature.

Now there is a difference in meaning between the phrases, "passage of this act," and "when this act takes effect," when applied to acts of the legislature. The former refers to the

31—55 WASH.

time the act receives the final sanction necessary to consti-
tute it a law, and the other is the time when it begins to
speak as a law. This distinction is made in the constitution
itself. For example, article 2, § 31, provides that, "No law,
except appropriation bills, shall take effect until ninety days
after the adjournment of the session at which it was en-
acted," etc., and the same idea is conveyed by the language
of article 3, § 12; thus showing that the framers of the con-
stitution meant one thing when they spoke of the passage
or enactment of a law, and another when they spoke of a
law going into effect. To give the phrase under considera-
tion, therefore, its natural and obvious meaning would be
to hold that it meant one year from the time the act received
the final sanction necessary to constitute it a law, namely,
the approval of the governor. It follows therefrom that the
action was barred by the statute of limitations, and it is so
ruled.

The judgment is affirmed.

CROW, PARKER, CHADWICK, and GOSE, JJ., concur.

RUDKIN, C. J. (dissenting)—I dissent. The act of 1907
fixes a two-fold limitation. First, a general limitation for all
actions to cancel or set aside tax deeds; and second, a special
limitation for deeds issued prior to its passage. It seems to
me that the legislature clearly intended that the two limita-
tions should become operative at the same time, and that the
period of limitation itself should be computed from that
time. No word or part of the act took effect until ninety
days after the adjournment of the legislature, and the one
and three years should be computed from that date. Every
legislative act should be read as of the day it becomes effec-
tive as a law, and all its provisions should be construed with
reference to that date, unless a contrary intent clearly ap-
pears. I discover no such contrary intent in this case. The
saving clause before us for construction refers to both the
past and the future with reference to a given point of time.

It speaks of deeds "heretofore issued" and of "one year after the passage of this act." The word "heretofore" refers to the date of the passage of the act as explicitly as do the words "one year after the passage of this act," yet it will scarcely be contended that the words "heretofore issued" do not include all deeds issued prior to the time the act took effect, for as said by this court in *State ex rel. Atkinson v. Northern Pac. R. Co.*, 53 Wash. 673, 102 Pac. 876:

"The general rule is that a statute speaks from the time it goes into effect, whether that time be the day of its enactment or some future day to which the power enacting the statute has postponed the time of its taking effect. 'A law must be understood as beginning to speak at the moment it takes effect, and not before. If passed to take effect at a future day, it must be construed as if passed on that day, and ordered to take immediate effect.' *Rice v. Ruddiman*, 10 Mich. 125. 'A statute passed to take effect at a future day must be understood as speaking from the time it goes into operation and not from the time of passage. Thus, the words 'heretofore,' 'hereafter,' and the like have reference to the time the statute becomes effective as a law, and not to the time of passage. Before that time no rights may be acquired under it, and no one is bound to regulate his conduct according to its terms; it is equivalent to a legislative declaration that the statute shall have no effect until the designated day.' 26 Am. & Eng. Ency. Law (2d ed.), p. 565. See, also, *Price v. Hopkin*, 13 Mich. 318; *Grant v. Alpena*, 107 Mich. 335, 65 N. W. 230; *Galveston etc. R. Co. v. State*, 81 Tex. 572, 17 S. W. 67; *Jackman v. Garland*, 64 Me. 133; *Evansville etc. R. Co. v. Barbee*, 59 Ind. 592."

If the word "heretofore" refers to the 12th day of June, 1907, or the time when the act took effect, why do not the other words of like import refer to the same date. An act is technically passed when signed by the presiding officers of both houses, yet few courts have held that the common phrase "after the passage of this act" should be construed with reference to that date. The courts, with great unanimity, hold that the words quoted do not refer to any earlier date than the approval of the act by the executive. This is not because

the approval of the act is any part of its passage, technically speaking, but because the act is ineffectual for any purpose until approved, and as the lapse of ninety days from the adjournment of the legislature is as indispensable to the efficacy of a law as the executive approval, why should not the words refer to the expiration of that period, as well as to the formal approval by the executive. I think the rule for which I contend is sustained by the weight of authority where similar constitutional provisions exist. *Ex parte Lucas*, 160 Mo. 218, 61 S. W. 218; *Harding v. People*, 10 Colo. 387, 15 Pac. 727; *State ex rel. Churchill v. Bemis*, 45 Neb. 724, 64 N. W. 348; *Rogers v. Vass*, 6 Iowa 405; *Schneider v. Hussey*, 2 Idaho 8, 1 Pac. 343; *Rice v. Ruddiman*, 10 Mich. 125.

In the *Lucas* case, the act under consideration required all barbers to procure a license from a board of examiners "within ninety days after the approval of this act." In the *Harding* case, the act provided that "The state board of medical examiners, within ninety days after the approval of this act, shall receive through its president applications for certificates and examination." In the *Bemis* case, the act provided for the appointment of a board of fire and police "within thirty days from and after its passage." In the *Rice* case, an act of the Michigan legislature, approved February 4, 1859, provided for the holding of an election in *April next.* In the *Schneider* case, the limitation act provided that "When the cause of action has already accrued, the party entitled and those claiming under him shall have, *after the passage of this act*, the whole period herein prescribed in which to commence an action." In each of these states laws do not take effect until ninety days after the adjournment of the legislature, in the absence of a declared emergency. It may be said that each of these laws required some act to be performed under it before the law itself took effect, and that such a construction was necessary to uphold the law, and this is in a measure true except in the Idaho case. But a reference to the cases

will show that the courts did not base their decision upon that ground, but upon the broad ground that the words, *after the passage of this act*, "must be understood under the constitution to mean ninety days after the act can and does constitutionally take effect in the absence of a declared emergency."

In *Rice v. Ruddiman,* Judge Christiancy said,

"It is very clear the act did not take effect till ninety days after the end of the session. But we do not think the act was therefore void as to the election provided for. *It took effect in May, 1859, and must be understood as beginning to speak at the moment when it became a law, and not before. It must have the same construction as if passed on the day when it took effect, and directed by a two-thirds vote to take immediate effect.* 'April next' must therefore be understood as April, 1860, being the next April after the act took effect."

In the *Schneider* case, the court said:

"The words 'passage of the act,' while they have a technical meaning which is well understood, in this connection and as used in the section referred to, must be held to mean the time when the act takes effect. Any other construction of the words would give life and action to this section before it can have any such life."

An estoppel is urged against the appellant in the briefs and oral argument, but there is nothing in the record upon which such a doctrine can rest. The tax sale was made about three years before the commencement of this action. During that period the property increased in value and improvements were made by the purchaser, but this alone will not support a plea of estoppel. Our statute has fixed the period of limitation for actions of this kind, and a court indulges in judicial legislation when it attempts to bar a right of action within the statutory period for mere inaction or delay on the part of a plaintiff.

It is said that the appellant holds title under a quitclaim deed, obtained from a former owner for a nominal consideration, and is a speculator in tax titles, but this argument, I

apprehend, is addressed to the man and not to the judge. Counsel, in his zeal, seems to forget that the act was not passed for his case alone; that it is a sword for attack as well as a shield for defense; that the decision of today may tomorrow measure the rights of others who have been deprived of their all through the machinations of the very class against which he so bitterly inveighs. Should such cases arise, perhaps the majority would gladly retrace their steps. The right to move against a tax deed is an incident to the ownership of property, and one claiming under a void tax deed cannot defend on the ground that the holder of the legal title paid less than the property was worth. The one holds under conveyance from the general government, the other claims under the state, and each must stand or fall by his own title.

Certainty in the law is to be desired above all else. Cases will doubtless arise in this jurisdiction, as they have in others, in which this court will be compelled to hold that "after the passage of an act" means after it has taken effect under the constitution. This construction, in my opinion, should always be adopted, unless the language of the act shows plainly and unequivocally that a different date was intended. If I am right in my conclusion, the judgment should be reversed. If there is a doubt as to the correctness of my views, the same result should follow, for the act cuts off an existing remedy, and must be strictly construed against those asserting the bar.

"It is also the well-settled rule of courts that when there is doubt as to the time when the limitation commences to run, that construction should be given which is most favorable to the enforcement of the common-law rights of the citizen." *Schneider v. Hussey, supra.*

Dunbar and Mount, JJ., concur with Rudkin, C. J.

Morris, J. (dissenting)—I concur in the result, holding that the demurrer was properly sustained upon other grounds than that suggested in the majority opinion. Upon the ques-

tion of the proper construction of the statute relative to the time when the proviso became effective, I join in the minority opinion.