Matthias, J.
The question presented by the record in this, case is whether the contract entered into by the plaintiff and the predecessor of the defendant is a binding and enforceable contract. It was executed June 30, 1911, and stipulated the price for electric current to be furnished the plaintiff for a period of two years, and a further period of ten. years at the option of plaintiff, which option was exercised at the proper time.
The legality of this contract turns upon the construction of the public utility law, and particularly the language used in Section 614-19, of the General Code. That section reads:
“The furnishing by any public utility of any product or service, at the rates, and upon the terms and conditions provided for in any existing contract, executed prior to the passage of this act, shall not be construed as constituting a discrimination, or undue or unreasonable preference, or advantage within the meaning specified.
“Provided, however, that when any such contract or contracts are or become terminable by notice, the commission shall have power, in its discretion, to direct by order, that such contract or contracts shall be terminated as and when directed by such order.”
*434 The public utilities act of which this section is a part was passed by the legislature May 31, 1911 (102 O. L., 549). It was presented to the governor on June 2, 1911, and was not signed or returned to the house wherein it originated within ten days after being so presented, exclusive of Sundays and the date it was presented, and was filed in the office of the secretary of state June 21, 1911. By Section 90 of this act it is provided that the “act shall take effect and be in force from and after June 30, 1911.”
It is contended by couns.el for plaintiff that by the provision just referred to no part of said act had. any life or validity whatever until July 1, 1911, and that the contract in question was not violative of any law in force and effect on June 30, 1911, when such contract was executed.
The legislature had full authority to make the entire act effective immediately upon its passage, and the date of the passage of the act is the date of the last act necessary to complete the process of legislation and give the bill the force of law. 1 Sutherland on Statutory Construction (2 ed.), Section 172, and Cordiner v. Dear et al., 55 Wash., 479.
Under the provisions of our constitution, before a bill passed by both houses may become a law it shall be presented to the governor and if he approves the same it thereupon becomes a law. If it is not approved and signed by him, and is not returned to the house where it originated within ten days after having been presented to him, exclusive of Sundays and the day it was presented, it becomes a law in like manner as if signed. The passage of *435 this measure was, therefore, complete on June 14, 1911, and consequently upon that date it became a law. The legislature in this instance, for reasons presumably satisfactory to itself, postponed' the date upon which the entire act should take effect and be in force to July 1, 1911.
The purpose of this legislation was not only to prevent a public utility from demanding unjust or unreasonable charges for its service, but to prevent it from giving undue or unreasonable preference or advantage to any person or corporation over others, or from receiving a greater or less compensation for service rendered or to be rendered than it receives from others for a like service under substantially the same circumstances and conditions. It sought to prevent unjust discrimination or preference, whether made by contract or otherwise, and to obviate conditions which had previously existed whereby public utilities had been permitted to grant favors to some customers at the expense and to the detriment of others. This act prohibits a public utility from charging in any instance a rate different from that specified in the schedule filed with the commission under the requirements of this act, and also from extending to any person, firm or corporation any privilege not uniformly extended to all under like circumstances; and it requires that every public utility file with the commission a copy of any contract relating to any service, rate or charge. The general provisions of the act are broad and comprehensive and apply to all contracts no matter when made, and prohibit the furnishing of service in any instance upon terms other than those set *436 forth in the schedule required to be filed with the commission. The legislature might have exempted from the operation of the provisions of the act any contract executed prior to July 1, 1911, the date upon which the act as an entirety should go into effect, but it chose to exempt only such contracts as had been executed prior to the passage of the act, and to make that portion of the act effective immediately upon its passage, so that preferential contracts could not thereafter be entered into and by reason thereof exemption claimed from the requirements of the law.
This law was in existence at the time the contract in question was made, or, to put it the other way, when this law was passed the contract in question here had not been executed. This bill not having been signed by the governor became a law at the expiration of the designated period after presentation, which was June 14, 1911. It is well settled that where a time in the future is stated in an act when it shall take effect and be in force it has effect and speaks only from that time. But that rule applies only where a contrary intention is not manifested in the act itself. Here a contrary intention is expressly stated, and a valid statute should have effect in accordance with the purpose and intent of the law-making body which enacts it. The purpose of the legislative body is clear and manifest, that though the full machinery for enforcement of the provisions of the act should not be set in motion until July 1, 1911, only contracts executed prior to the passage of the act should not be construed as constituting a discrimination or *437 undue or unreasonable preference or advantage within the meaning of such act; and it precluded the execution of contracts subsequent to the passage of the act, which otherwise would escape the inhibitory provisions of the act'and in a measure thwart its very design and purpose.
The judgment of the court*of appeals affirmed.

Judgment affirmed.

Nichols, C. J., Jones, Johnson, Wanamaker and Robinson, JJ., concur.