[No. 29909. *En Banc.* December 19, 1946.]

E. R. TURPEN et al., *Appellants,* v. MOSE JOHNSON et al., *Respondents.*[1]

[1]Reported in 175 P. (2d) 495.

*Edgar M. Swan,* for appellants.

*Sugg & Mason,* for respondents.

Connelly, J.—This is an action brought by plaintiffs, E. R. Turpen and wife, against Mose Johnson and wife and Clark county, a municipal corporation, as defendants. Its purpose is to quiet title in certain real estate situated in Clark county, Washington, which, so far as our present inquiry is concerned, is described as follows:

"Beginning at a point 8.15 chains North and 6.50 chains East of the quarter section *corner between Sections 14 and 23,* Township 2 North, Range 1 East of the W. M. . . . (Carried as Assessor's Tax Lot No. 22 of Niels Hendrichsen D.L.C.)" (Italics ours.)

Plaintiffs alleged and proved, by deed offered and received in evidence, that they were the owners of the real estate so described as successors in interest of one Christina Schmeer, their grantor, who had conveyed the property in question to them on August 11, 1944. Plaintiffs' amended complaint further alleged that Clark county had acquired title to the property in question in a tax foreclosure proceeding instituted in the superior court of the state of Washington for Clark county in cause No. 15869, and that such foreclosure proceeding included certificate of delinquency No. 10, which had been issued in the name of one Edward Schmeer, former owner of the property. Edward Schmeer was the husband of Christina Schmeer. He died intestate, March 6, 1938.

It was further alleged by plaintiffs that the foreclosure proceeding resulted in judgment and execution sale and conveyance by deed from the treasurer of Clark county to Clark county, a municipal corporation, of premises apparently intended to be the identical premises now in controversy, but erroneously described as:

"Beginning at a point 8.15 chains North and 6.50 chains East of the quarter section *corner between Sections 14 and 25*, . . . (Carried as Assessor's Tax Lot No. 22 of Niels Hendrichsen D.L.C.)" (Italics ours.)

The tax foreclosure proceeding terminated by entry of decree in the superior court for Clark county on January 13, 1937.

Defendants Johnson and wife based claim to their right and interest in the property upon an executory contract of purchase of the premises in controversy entered into between them and Clark county on May 22, 1943. This contract also contained the erroneous description of the property, identical with the same erroneous description carried in the foreclosure proceeding, in that it contained the words "corner between sections 14 and 25" in the metes and bounds description, whereas such description should have read "corner between sections 14 and 23."

It must be noted, however, that the description of the premises set forth in the contract between Clark county and Johnson and wife contained the words "(Carried as Assessor's Tax Lot No. 22 of Niels Hendrichsen D.L.C.)"

Plaintiffs' action to quiet title and to set aside the foreclosure proceedings whereby Clark county assumed title to the property was commenced on September 7, 1944, which was more than seven years after entry of decree in the tax foreclosure proceeding. In their original answers, neither Clark county nor the Johnsons, as defendants, pleaded the statute of limitations; and plaintiffs, in their original complaint, failed to mention the date of the deed of conveyance by which they claimed to have acquired title from Christina Schmeer.

In an amended answer and affirmative defense, defendants Johnson pleaded the statute of limitations as a bar

to plaintiffs' cause of action. Later developments in the trial indicated that defendants Johnson were relying upon Rem. Rev. Stat., § 162 [P.P.C. § 73-13], which provides as follows:

"Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county or municipal taxes, or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer's deed: Provided, that this section shall not apply to actions not otherwise barred on deeds heretofore issued if the same be commenced within one year after the passage of this act."

At the trial, no effort was made by either Clark county or the defendants Johnson to establish the statute of limitations as a defense. Seventy-two days after the trial had ended and fifty-six days after the court's decision had been entered on the merits, defendants Johnson interposed a motion for leave to reopen the case and to submit evidence supporting the allegation in their amended complaint that the statute of limitations was in effect and constituted a bar to plaintiffs' action. The court ordered the case reopened and received testimony as to the date of the treasurer's deed to Clark county, following entry of decree of foreclosure against the land in controversy.

As heretofore noted, in all of the foreclosure proceedings, including notice, complaint, and judgment, and in the purchase contract between Clark county and the Johnsons, there was, following the erroneous metes and bounds description, a definite reference description reading as follows: "(Carried as Assessor's Tax Lot No. 22 of Niels Hendrichsen D.L.C.)" True, the correct metes and bounds description required a showing of cornering between sections 14 and 23. In the foreclosure proceeding, the description referred to the tract's cornering between sections 14 and 25, which, of course, is a legal and physical impossibility. This was the clerical inadvertence which brought on the present litigation. The phrase referring to "Assessor's Tax Lot No. 22 of Niels Hendrichsen D.L.C." specifically relates to the tract cornering between sections 14 and 23. In this connec-

tion, reference is had to the testimony of John Spurgeon, county assessor of Clark county:

"Q. Can you give me the legal description from the records in your office of Tax Lot No. 22 of Nels Hen[d]richsen D.L.C.? A. Yes. Q. Will you give that description, please? Mr. Swan: Just a moment, now. The plaintiffs object to this testimony on the ground that the record which he is referring to is not an official record and is merely a record kept for the convenience of the Assessor's office and does not in itself constitute an official county record and therefore it is immaterial and incompetent. Now, I am willing to let Mr. Spurgeon testify subject to my objection so that he can get away. If we have to argue this, it may take some time. The Court: I see what you mean. I will reserve ruling on the objection, then, and the witness may answer. A. This is the description of No. 22: Beginning at a point 8.15 chains north and 6.50 chains east of quarter section corner between sections 14 and 23, 2N 1E, that is Township 2 North, Range 1 East of the Willamette Meridian; thence North 18.45 chains; thence east 6.58 chains; thence south 19.99 chains; east 1.99 chains to the northwest corner of the Sanderson 5 acre tract; thence— The Court: 99 or 91? A. (continuing) 1.91; thence south along the west line of said tract 5.07 chains; thence North 48° 32′ West 10.88 chains to beginning, containing 15 acres more or less, except for the Bonneville right of way. Q. This which you have just read is your tax No. 22 of Niels Hen[d]richsen D.L.C., Donation Land Claim? A. It is."

To this extent, therefore, and in spite of the erroneous metes and bounds description contained in the foreclosure complaint and the decree which followed, the actual land in controversy is definitely traceable and accurately described in both the foreclosure decree and in the Johnson contract with Clark county.

The trial court held that the statute of limitations constituted a complete defense to plaintiffs' action and quieted title in the Johnsons. Plaintiffs have appealed, bringing to this court four main questions for determination. They may be summarized as follows:

(1) Is appellants' action to quiet title, instituted more than seven years after the entry of judgment in the fore-

closure proceeding, barred by the three-year statute of limitations which is defined in Rem. Rev. Stat., § 162?

(2) Assuming that the statute of limitations might be set up as a defense by Clark county, may it be interposed by respondents Johnson, Clark county's vendees under an executory contract? More succinctly stated, does the purchaser of real estate under an executory contract acquire an interest in the property which may be made the basis of a suit, or countersuit, to protect or quiet title later to be acquired?

(3) Is the reference description to the property in question sufficient to validate Clark county's title, acquired in a foreclosure proceeding, where the metes and bounds description is otherwise erroneous?

(4) Did the trial court abuse its discretion in permitting the case to be reopened for the purpose of allowing respondents Johnson to prove that appellants' action was barred by the statute of limitations?

We must answer proposition (1) in the affirmative. Even though the description contained in the decree of foreclosure is void, appellants' present action to quiet title, brought seven years after entry of decree in the tax foreclosure proceeding, could not prevail in the face of the statute of limitations, Rem. Rev. Stat., § 162. We have held that the county may avail itself of the defense that the action is barred by the statute of limitations, even though the tax deed purporting to convey title to the county is void.

In *White v. Gehrman,* 1 Wn. (2d) 504, 96 P. (2d) 453, we said:

"The second contention made by appellants is that, as the deed given by the town was not signed by its treasurer as commanded by statute, and was therefore void upon its face, its execution, delivery, and recording was not sufficient to start the running of the statute of limitations.

" 'There is great conflict of authority as to whether a deed which is void on its face will give color of title. Many decisions hold that such deeds do not give color of title. But the weight of authority is to the effect that a deed void on its face may give color of title as effectually as though the

deed was regular on its face and void for reasons dehors the instrument.' 2 C. J. 176, § 338.

" 'There is no doubt that a deed fair on its face constitutes color of title, no matter what defect may really exist in the proceedings; but it has been held that a deed void on its face would not amount to color of title.' The weight of authority and reason is, however, to the effect that whether the deed be void on its face or not, if it *is a deed,* and of such a character that an ordinary purchaser unskilled in the learning of the law might believe it to be a good conveyance, it will be sufficient.' 2 Blackwell on Tax Titles (5th ed.), 805, § 861.

"We are unable to apprehend why distinction should be drawn between a fact appearing upon the face of a deed which shows a defect in title, and a fact existing outside the deed having the same effect, which the purchaser is equally bound to notice.

"The statute, § 9394-1, does not contain language which shows, or in any way tends to show, that the legislature contemplated difference in the legal consequences attendant upon one or the other of these possible defects in the purchaser's title. The statute, in fixing the limit of three years in which action may be instituted, makes no reference to the form or contents of the deed. It does not state that the tax deed must be valid upon its face. It provides in plain, concise language that the action to set aside or cancel 'any deed . . . must be brought within three years from and after the date and issuance of such deed.'

"No logical reason can be advanced for establishing a distinction between defects which are apparent upon the face of the deed itself and defects appearing in the record of the proceedings anterior to the issuance of the deed.

"The trial court was correct in holding that the action could not be maintained, and the judgment is accordingly affirmed."

In *Eagles v. General Electric Co.,* 5 Wn. (2d) 20, 104 P. (2d) 912, this court, speaking at p. 34, said:

"But we have held, in substance, that a tax deed, under our statutes, institutes a new and complete title, subject to defeasance only by a suit by the former owner which must be brought within three years. It is said in *Sparks v. Standard Lumber Co.,* 92 Wash. 584, 586, 159 Pac. 812:

" 'The legislature has for twenty-five years, by the clearest expressions, made a tax foreclosure a proceeding *in rem,*

and a tax title a favored title as contradistinguished from the ordinary conception of a tax title—a title tainted with the suspicion of illegitimacy. *In keeping with its purpose, it has even made a title issued under a void tax foreclosure a good title if not attacked within three years.* [Citing seven former decisions.]

" 'To this purpose the courts have given liberal response. So that, with the passing of the old rule, it may fairly be said that a tax title is no longer *nullius filius,* but is equivalent to a decree quieting the title in the purchaser as a grant from the sovereign state. [Citing four former decisions.]' (Italics ours.)

"We hold, therefore, that the title to this property, the tax deeds not having been attacked within three years, became absolute in the purchaser or his transferees, as to one portion on October 27, 1926, and as to the other, on October 25, 1927."

See, also, *Cordiner v. Dear,* 55 Wash. 479, 104 Pac. 780; *Huber v. Brown,* 57 Wash. 654, 107 Pac. 850; *Baylis v. Kerrick,* 64 Wash. 410, 116 Pac. 1082; *Fleming v. Stearns,* 66 Wash. 655, 120 Pac. 522; *Savage v. Ash,* 86 Wash. 43, 149 Pac. 325; *Keller v. Davis,* 93 Wash. 336, 160 Pac. 946; *Porter v. Burkley,* 112 Wash. 282, 191 Pac. 799; *Jorgensen v. Thurston County,* 145 Wash. 282, 259 Pac. 720.

In considering proposition (2), we are faced with a question which, for many years, has provided more than its share of vexatiousness, i. e., what rights, legal, equitable, or otherwise, has a vendee of property under an executory contract if the title which he hopes to acquire, or the property which is the subject matter of the contract, is placed in danger?

In 1925, this court decided three cases which constitute the monumental landmarks around which the storm of controversy has continued to spend its fury. They are *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29; *Holt Mfg. Co. v. Jaussaud,* 132 Wash. 667, 233 Pac. 35, 38 A. L. R. 1312; *In re Kuhn's Estate,* 132 Wash. 678, 233 Pac. 293. A rule common to each of them was laid down that an executory contract for the sale of either real estate or personal property created no title, legal or equitable, in the vendee.

*Ashford v. Reese, supra,* related to the division of the proceeds of a fire insurance policy, following the destruction

of the constructed improvements upon real estate which, at the time, was being sold under executory contract.

*Holt Mfg. Co. v. Jaussaud, supra,* adhered to the same ruling when applied to the proceeds of a fire insurance policy covering personal property, consisting of farm machinery, being purchased on conditional sales contract.

*In re Kuhn's Estate* presented for solution the problem of whether or not property being purchased under contract by a married person became community property following such purchaser's demise. This is the case upon which appellants in the instant case strongly rely. Were it not for the modification of the original rule, as laid down in our later decisions, the language in the *Kuhn* case would justify appellants' position.

Without reviewing all of the authorities on the subject which would unnecessarily extend this opinion to extreme and undue length, it may safely be stated that the modern rule of this court is clearly and definitely expressed in *Lawson v. Helmich,* 20 Wn. (2d) 167, 146 P. (2d) 537, 151 A. L. R. 930. That case, on appeal from Yakima county, involved the destruction of fruit trees upon a tract of land which was being purchased by the plaintiff on executory contract. So far as pertinent to our inquiry, the meat of the opinion in *Lawson v. Helmich* is found in the following language:

"Without attempting to say just what the effect of our decisions rendered subsequent to *Ashford v. Reese, supra,* in so far as the questions therein involved are concerned, may be, we are satisfied that in subsequent decisions we have committed ourselves to the rule that the vendee under a forfeitable executory contract has a right in the land, which, coupled with possession, is sufficient to entitle him to bring an action for damages for injury to the land caused by removal of trees, as in the instant case."

In *State ex rel. Oatey Orchard Co. v. Superior Court,* 154 Wash. 10, 280 Pac. 350, there was presented the question of what rights, if any, a vendee might have under a forfeitable executory real estate contract of purchase. The term "real property," in the light of the attachment statutes,

is therein defined. Judge Main, in that opinion, used the following language:

"It will be observed that the statute uses the words, 'real property,' which have a comprehensive meaning. They include not only land and whatever is erected or growing thereon, or affixed thereto, but also rights issuing out of, annexed to and exercisable within or about the land. In Bouvier's Law Dictionary, 'real property' is referred to as follows:

" 'Land, and generally whatever is erected or growing upon or affixed to land. *Lanpher v. Glenn,* 37 Minn. 4, 33 N. W. 10. Also rights issuing out of, annexed to, and exercisable within or about the same    . . .'

"Under the contract above mentioned, the Josephs had a right to the possession of the land, the right to the dominion and control thereof, the right to care for, cultivate and harvest the crops grown thereon. These are rights which do not rise to the dignity of title, either legal or equitable, but which are annexed to and are exercisable with reference to the land, and therefore come within the designation of 'real property.'

"The case of *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29, and the cases upon which that case is based, hold that the purchaser under·a contract such as the one involved in this case has no title, either legal or equitable, to the land, until the full consideration has been paid. It was not held in *Ashford v. Reese,* or in any of the cases upon which that case is based, that a purchaser under such a contract as is here involved did not have any rights thereunder which were annexed to or exercisable with reference to the land."

In *Vandin v. McCleary Timber Co.,* 157 Wash. 635, 289 Pac. 1016, John A. Scully, Inc., entered into an executory contract for the sale of lots in Thurston county to Vandin and wife. The record did not disclose whether they ever entered into possession of the land. The contract was never recorded. Thereafter, Scully assigned his contract to Maury, who collected the monthly installments due thereon from Vandin. In the meantime, McCleary Timber Company secured a judgment against Scully, Inc., and the lots in question were sold on execution sale to the McCleary Timber Company, which received a sheriff's deed. Thereafter,

Vandin and wife commenced an action to quiet title to the two lots. This court held:

"True, we said in *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29, that an executory contract to convey real property vested 'no title or interest, either legal or equitable, to the vendee' until the contract is fully performed. But we did not hold that an executory contract for the sale of land vested no right in the vendee which the court will enforce at the suit of the vendee. *Pratt v. Rhodes,* 142 Wash. 411, 253 Pac. 640, 256 Pac. 503. Such contracts have all the validity that any other executory contract has which is duly and regularly executed by parties competent to contract. The respondent vendees have substantial rights, among which are the right of possession and the right to acquire title in accordance with the terms of the contract. If equity require, the courts will specifically enforce such contracts.

" '. . . neither in the *Ashford* case or elsewhere has this court said that a purchaser in possession under an executory contract has no rights. Undoubtedly such purchaser does have a right of possession and a right to acquire title in accordance with the terms of the contract. Such rights, though not amounting to title, are substantial rights such as one having notice and knowledge is bound to respect. The doctrine of notice is not confined to the protection of titles, but extends to all substantial rights, as a reference to the law of negotiable instruments will clearly show.' *Oliver v. McEachran,* 149 Wash. 433, 271 Pac. 93.

"See, also, *State ex rel. Oatey Orchard Co. v. Superior Court,* 154 Wash. 10, 280 Pac. 350."

*Lawson v. Helmich, supra,* likewise calls attention to *In re Horse Heaven Irr. Dist.,* 11 Wn. (2d) 218, 118 P. (2d) 972, wherein it was held that vendees under executory contracts to purchase land within an irrigation district were entitled, as property holders, as that term was defined by statute, to share in the distribution of the assets of the corporation after its dissolution.

While none of the cases cited present the exact factual situation contained in our present inquiry, the logic and reasoning of the decisions cited lend irresistible force to the conclusion that the vendee under an executory contract, though not possessed of title or any fractional part of title or even of equitable interest, has a right to

protect the property and the title which he anticipates he will acquire therein to the extent of combating trespass and waste on the premises, and commission of damage thereon; that he likewise has the right to prevent the extinction of title by levy of execution thereon, as in *Vandin v. McCleary Timber Co., supra.*

If the vendee under such a contract may contest execution and attachment and physical damage, certainly he may contest a suit to quiet title by interposing any defense thereto which the law permits. In this case, respondent Johnson's main defense to defeat appellants' suit to quiet title was the statute of limitations. His was the title affected by Turpen's action, for if Turpen prevailed Johnson would never acquire a title and would be dispossessed of the land which, under his contract, he had a right to purchase.

This view is in keeping with the somewhat prophetic language used by Dean Alfred J. Schweppe, of the University of Washington Law School, in his very excellent discussion of *Ashford v. Reese, supra,* published in 2 Wash. L. Rev. 10, November, 1926. He said:

"The established doctrine of equity and the one that is regarded by the overwhelming weight of authority as in accord with sound policy and practice, is that the vendee under a forfeitable executory contract acquires an interest in land, upon which a judgment is a lien, which may be attached, and upon which execution may be levied, and which is devisable by the vendee, and descendible to his heirs as real estate. If our Court would now so hold (which it is not too late to do in view of the conflicting holdings in our decisions, and the different views which different members of the present Court have taken at different times) the rule in this state would again be in accord with the virtually uniform current of authority elsewhere and make it unnecessary for the legislature to intervene."

This review was followed by an equally comprehensive discussion of the same subject by Mr. George D. Lantz of the Spokane bar. His article is entitled "RIGHTS OF VENDEES UNDER EXECUTORY CONTRACTS OF SALE," published in 3 Wash. L. Rev. 11, March, 1928. He said:

"While confusion of terms has resulted in incorrect applications of the rule that no equitable or legal interest in the property passes to the vendee under an executory contract to sell, in the *Schaefer, Ashford* and *Holt Manufacturing Company* cases, and unfortunate language was used in the dissenting opinions, there is no reasonable probability of the court holding that the vendee's contractual rights in the property will not be fully protected by the courts."

Proposition (3) has to do with the force and efficacy of the reference description of the premises in question, as used in the foreclosure proceeding and in the contract to the Johnsons. It was designated as "Assessor's Tax Lot No. 22 of Niels Hendrichsen D.L.C." The assessor's testimony clearly indicates that assessor's tax lot No. 22 of Niels Hendrichsen's donation land claim related to the real estate described in appellants' deed from Christina Schmeer and included the language *"corner between sections 14 and 23."* This was the true description on the records of the assessor and the treasurer of Clark county and was, therefore, the description to which the reference phrase "Assessor's Tax Lot No. 22," as used in the foreclosure proceeding and in the contract between Clark county and Johnson, clearly pointed.

The controlling rule is well stated in *Wingard v. Pierce County*, 23 Wn. (2d) 296, 160 P. (2d) 1009, in the following language:

"The general rule is that, in order to divest the owner's title through a tax foreclosure, the property must be identified in the proceedings and described with reasonable certainty, so that a person of ordinary intelligence could, from an examination of the foreclosure proceedings, locate the property sought to be foreclosed. . . . .

"Conversely, if the description affords an intelligent means of identifying the property and does not mislead, it is sufficient."

In the *Wingard* case, language is quoted from our opinion in *Ontario Land Co. v. Yordy*, 44 Wash. 239, 87 Pac. 257, which we feel has a direct bearing upon our present inquiry. It is, accordingly, repeated:

" 'It is a well-established principle of law that a description in a deed, or other instrument affecting title to real

estate, is sufficient if it affords an intelligent means for identifying the property, and does not mislead. In other words, if a person of ordinary intelligence and understanding can successfully use the description in an attempt to locate and identify the particular property sought to be conveyed, the description answers its purpose and must be held sufficient. Mr. Jones, at section 323 of his treatise on the Law of Real Property in Conveyancing, says:

" ' "The first requisite of an adequate description is that the land shall be identified with reasonable certainty, but the degree of certainty required is always qualified by the application of the rule that that is certain which can be made certain. A deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it was intended to convey. The office of a description is not to identify the land, but to furnish the means of identification. The description will be liberally construed to afford the basis of a valid grant. It is only when it remains a matter of conjecture what property was intended to be conveyed, after resorting to such extrinsic evidence as is admissible, that the deed will be held void for uncertainty in the description of parcels." '

" 'When real estate is listed and assessed for taxation, it is ordinarily necessary that the assessment roll shall contain a reasonably accurate description of the tract sought to be taxed. The object of this requirement is stated by writers on taxation and tax titles to be three-fold, (1) it is designed to inform the owner of the claim upon his property; (2) it is designed that intending purchasers may know what property will be offered for sale in the event of the taxes becoming delinquent; and (3) it is also the intention that under such description a proper deed may be executed to the purchaser. Cooley, Taxation (2d ed.), p. 405; Black, Tax Titles (2d ed.), § 112.' "

In *Napier v. Runkel,* 9 Wn. (2d) 246, 114 P. (2d) 534, 137 A. L. R. 175, this court held:

"The general rule is that, in order to divest the owner's title through a tax foreclosure, the property must be identified in the proceedings and described with reasonable certainty, so that a person of ordinary intelligence, from an examination of the foreclosure proceedings, *could locate the property sought to be foreclosed.*" (Italics ours.)

In 51 Am. Jur. 904, § 1035, under the topical subject heading "Taxation," the following observation is made:

"The purpose of requiring a description of the property in the notice of a tax sale or of tax foreclosure proceedings is two fold: (1) to warn the owner that his property is to be sold, so that he can prevent the sale by paying his taxes, and (2) to advise prospective purchasers, so that they can investigate the property and determine whether they want to bid; and such notice must ordinarily describe the property to be sold, with reasonable certainty, so that a person of ordinary intelligence, from an examination of the foreclosure proceeding, can locate the property sought to be foreclosed. The property should be so described as to admit of its identification by recourse to official records, or at least by some means which may be referred to as common or general knowledge, concerning which accurate information may easily be obtained. . . .

"Whether the description in a tax notice is sufficient is a question of fact. Ordinarily, if the description is sufficient to notify the owner, it is sufficient to notify the public. While the description should be such as to enable both owner and bidder from its terms to locate with substantial certainty the land to be sold, it need not be so detailed as to point out visually its precise boundaries so that an utter stranger unacquainted with the locality and ignorant of the neighbors could find it without inquiry. . . .

"In some cases, descriptions by lot or block numbers have been held insufficient in the absence of any reference to any map or plat on which such lot or block numbers could be found, but in other cases references to lot and block numbers have been held to describe the land sufficiently, notwithstanding failure to designate the map or plat on which the property was shown according to the numbers by which it was described in the notice."

And again, in § 1159, at p. 999, under the discussion "Application to Defective Descriptions," we find the following:

"Although there is some authority to the contrary, the general rule is that the special or short limitation periods provided for the purpose of barring attacks on tax sales are not applicable to protect tax titles based on such sales, if the description in the tax assessment or tax deed does not describe the property purported to have been sold for taxes, or the description is so vague, uncertain, or erroneous that the property in question cannot be identified. Such statute

has been held not to be applicable where the description of the land in the tax deed varies materially from that in the assessment. On the other hand, a defective description in a tax assessment or tax deed may be protected by the limitation provision applicable to tax titles where such description is sufficient reasonably to identify the property sold for taxes, or is sufficient to furnish the means of identification, evidence aliunde or dehors the record being admissible for that purpose."

See, also, *Jackson v. Irion,* 196 La. 728, 200 So. 18, 133 A. L. R. 566.

Black on Tax Titles (2d ed.) 140, § 112, cited with approval in the *Yordy* case, *supra,* and again in the *Wingard* case, states:

"But it is very difficult to deduce from the authorities a satisfactory answer to the question, what is a sufficient description? Each case will be largely governed by its own circumstances, keeping in view, however, the objects for which this requirement exists.

"It is sometimes said to be necessary that the land assessed should be designated by its boundaries, and when the boundaries given are confused and erroneous, the assessment does not possess that particularity and certainty requisite for the validity of a tax sale. But it is evident that there may well be methods of describing a specific parcel, other than by its boundaries, which would be quite sufficient for all the purposes of the requirement. However, it may well be that land lying outside of a city or town should be described by its metes and bounds, unless the particular case furnishes other elements of a sufficient description."

A similar rule has been recognized in construing defective descriptions in deeds of conveyance. In *Sengfelder v. Hill,* 21 Wash. 371, 58 Pac. 250, Judge Fullerton said:

"To render a deed void for uncertain description, there must be either a fatal infirmity in the description, appearing on the face of the instrument, or an inability to apply the given description to any particular property. When the objection to the description is made upon the first ground, its sufficiency is determined by an inspection of the deed itself, without ulterior inquiry. But, before a deed will be declared void for the latter reason, all sources of inquiry which the description itself and the circumstances sur-

rounding the parties and the conditions existing at the time of its execution naturally suggest must be exhausted in a vain effort to locate the property."

In *Opsjon v. Engebo*, 73 Wash. 324, 131 Pac. 1146, this court said:

"It is contended that the description in the deed which the respondents tendered is indefinite. It suffices to say that it conveys the identical property which the respondents agreed to convey, and that a mathematical calculation will disclose that the description is definite and easily susceptible of identification. This is all the law requires. *Rucker v. Steelman*, 73 Ind. 396; *Sengfelder v. Hill*, 21 Wash. 371, 58 Pac. 250."

See, also, *Bain v. Tye*, 160 Ky. 408, 169 S. W. 843; *United States Coal & Coke Co. v. Cecil*, 109 W. Va. 608, 155 S. E. 899.

Proposition (4) relates to appellants' contention that the trial court abused its discretion in reopening the case seventy-two days after conclusion of the taking of evidence in order to permit respondents Johnson to introduce proof in support of their contention that the statute of limitations applied.

The opening or reopening of a case for the taking of further testimony is always a matter which rests in the sound discretion of the trial court and which we will not disturb, in the absence of a showing of abuse of discretion on the part of a trial judge, or the exercise of arbitrary and capricious action by him. We find no reason for disturbing the rule in this case.

The controlling element in the entire case was the application of the statute of limitations. Why it was not pleaded earlier in the proceedings or raised during the trial by the trial court, is not for us to answer. That it was raised eventually and is now the subject of final determination in this court is, we feel, in the interests of justice. Certainly, no one's rights were prejudiced by permitting the reopening of the case for the submission of proof in connection with the statute of limitations. It is of scant moment whether this was done during the trial itself or seventy-

two days later. Under our repeated rulings on the question, the trial judge was required, in the exercise of his judicial discretion, to reopen the case for the purpose of permitting the interposing of the statute of limitations as a defense by respondents Johnson and the receiving of evidence in support thereof. See *Richardson v. Agnew*, 46 Wash. 117, 89 Pac. 404; *Reiff v. Coulter*, 47 Wash. 678, 92 Pac. 436; *Norton v. Pacific Power & Light Co.*, 79 Wash. 625, 140 Pac. 905; *Godefroy v. Hupp*, 93 Wash. 371, 160 Pac. 1056, Ann. Cas. 1918E, 494; *Shultz v. Crewdson*, 95 Wash. 266, 163 Pac. 734; *Mansfield v. Yates-American Machine Co.*, 153 Wash. 345, 279 Pac. 595; *Niemeier v. Rosenbaum*, 189 Wash. 1, 63 P. (2d) 424.

For the foregoing reasons, the judgment of the lower court is affirmed.

MILLARD, C. J. STEINERT, ROBINSON, JEFFERS, MALLERY, SCHWELLENBACH, and ABEL, JJ., concur.

SIMPSON, J., dissents.

