## Bain, et al. v. Tye, et al.

(Decided October 21, 1914.)

### Appeal from Knox Circuit Court.

1. **Deeds—Construction—Intention of Parties.**—The intention of the parties as apparent in a deed should generally control in determining the property conveyed thereby; but if the intent is not apparent from the deed, resort may be had to the general rules of construction.

2. **Deeds—Construction—Intention of Parties.**—Where the words used in a deed are uncertain, or ambiguous, and the parties have by their conduct given a practical construction thereto, the construction so put upon the deed by them will be resorted to, to aid in ascertaining their intention.

3. **Deeds—Description.**—The entire description in a deed should be considered in determining the identity of the land conveyed. Clauses inserted in a deed should be regarded as inserted for a purpose, and should be given a meaning that will aid the description.

4. **Deeds—Every part of a deed ought, if possible, to take effect, and every word to operate.**

5. **Deeds—Construction.**—In determining the effect of a general clause or recital which may operate to extend a grant, such a construction should be given as will, if possible, carry into effect every part of the deed; but, where the construction is doubtful, the instrument should be construed against the grantor.

6. **Deeds—Description.**—A particular description in a deed which is clear and explicit, and is a complete identification of the property intended to be conveyed, will not be varied or enlarged by a more general or less definite description, since in such a case the particular description will be considered as expressing the intent of the parties, rather than the general description.

7. **Deeds—Description.**—A particular description may yield to a general description where the former is defective; where the grant is made certain under the general description, and is less than under the particular description; or where there is a clear intent to have the general description control.

J. D. TUGGLE and B. B. GOLDEN for appellants.

DISHMAN, TINSLEY & DISHMAN and J. M. ROBSION for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On May 29, 1855, Moses F. Ingram surveyed and procured a patent for 50 acres of land situated on the Oatfield Branch of the waters of Greasy Creek, in Knox County. The boundary of said land may be read in the opinion in Sprouls v. Hays, 143 Ky., 532, where this tract formerly was in litigation. Moses F. Ingram also acquired other tracts of land in the immediate neighborhood, including a tract of 50 acres, surveyed August 16, 1866, and a third tract of 100 acres, surveyed December 15, 1870.

Early in January, 1877, Moses F. Ingram having determined to move to Texas, "sold out" his lands in Kentucky to Powell Centers and William H. Ingram for $300.00 in cash. Moses F. Ingram made a deed to Centers and William H. Ingram on January 27, 1877, carrying out the sale, whereby he conveyed to his grantees "about three hundred acres, be the same more or less," and bounded as follows:

"Beginning on the north side of the Pine Mountain at said Ingram's back line; running with a conditional line between M. F. Ingram and Wilk Thompson to Greasy Creek; thence down said creek to Henry Nelson's line; thence crossing said creek, running up the Brush Creek ridge with said Henry Nelson's conditional line to the top of the ridge and a corner of T. J. Ingram; thence with T. J. Ingram's line to a locust tree near the head of the Oatfield Branch on the top of said ridge, T. J. Ingram's corner; thence across the head of the Oatfield Branch with said M. F. Ingram's line to the Crank Branch gap; thence down a spur of the ridge with M. F. Ingram's line to a corner of a survey made by George E. Golden; thence with said Golden's line down the ridge to Greasy Creek; thence crossing said creek and up the Pine Mountain with M. F. Ingram's and Golden's line, said M. F. Ingram's back line; thence with said Ingram's line to the beginning.

"The parties of the second part, Powell Centers and Wm. H. Ingram and their heirs, to have and to hold free from M. F. Ingram and his heirs; and the said M. F. Ingram binds himself and his heirs as far as the title vested in him to them to hold said land. The above described land and boundary contains a portion of a tract of land deeded to said M. F. Ingram by his father Wm. Ingram, and one fifty acre survey in his name bearing

date the 29th day of May, 1855, one other fifty acre survey made in his name bearing date the 15th day of August, 1856, also one hundred acres surveyed by him on ............... day of ............................., 18.........; this the day and date above written, signed and delivered.''

This deed was duly recorded on November 26, 1877. By subsequent conveyances the land embraced in the fifty acre survey of May 29, 1855, was conveyed to the appellees, Tye, Hays and Dishman, and by them to the appellee the Greasy Brush Coal Company, the present owner.

Moses F. Ingram carried out his intention of leaving Kentucky and went to Texas in 1877. The proof shows his intention was to live there permanently; but on account of the ill health of some of his family he returned to Kentucky in 1878, and settled in the immediate neighborhood from which he had removed the year before. He lived there, always as a renter, and without making any claim whatever to any of the land which he had formerly owned, until his death in 1889. His heirs at law, consisting of his children and grandchildren, also lived in the neighborhood, and none of them made any claim to this property until May, 1911, when they hurriedly built a ''shanty'' on the fifty acre survey of May 29, 1855, and moved into it, all in one day. Their purpose was to assert title to this survey and support their title by possession. On the next day the appellees, Tye and his joint owners, brought this action against the heirs of Moses F. Ingram, seeking to enjoin them from trespassing upon said land, or from claiming title thereto, and to quiet the plaintiffs' title. Upon the hearing the chancellor granted the relief sought; and from that judgment the defendants prosecute this appeal.

The sole question for determination is this: Is the Moses F. Ingram fifty acre survey of May 29, 1855, embraced in the land conveyed by the deed of January 27, 1877, from Moses F. Ingram to Powell Centers and William H. Ingram? If it is so embraced, the plaintiffs below, who are appellees here, are unquestionably the owners of the fifty acres and the judgment of the chancellor is correct. On the other hand, if the fifty acre survey of May 29, 1855, was not embraced in the three hundred acre tract, then the title to the fifty acre tract remained in Moses F. Ingram and descended to his heirs; and, if that be true, the judgment of the chancellor is wrong and should be reversed.

Appellants rest their case upon the well known legal proposition that in case of a conflict between the particular description and the general description in a deed, the particular, and not the general description, controls. It will be noticed that the particular description of the three hundred acres sold by Moses F. Ingram to Powell Centers and William H. Ingram in 1877, and contained in the granting clause thereof gives neither calls nor distances; they are confined to the natural objects for a boundary. The general description contained in the *habendum* clause expressly says the three hundred acres contains, among other lands, the fifty acre survey in the name of Moses F. Ingram, bearing date the 29th day of May, 1855. It is apparent from the face of the deed that it was not drawn by an expert, and was in a large measure drawn from memory so far as the boundaries were concerned. This idea is borne out by the fact that in attempting to describe the fifty acre survey of August 16, 1866, the deed describes it as the survey of the 15th day of August, 1856.

It is an elementary rule in the interpretation of deeds that the intention of the parties should be effectuated, and in doing this a liberal construction is given to deeds inartificially and untechnically drawn. The intent must primarily be gathered from a fair consideration of the entire instrument and the language employed therein, and should be consistent with the terms of the deed, including its scope and subject matter. Heingley v. Harris, 1 Ky. Law Rep., 55; Davis v. Hardin, 80 Ky., 672; Ferrill v. Cleveland, 6 Ky. Law Rep., 512.

Furthermore, effect and meaning must be given to every part of a deed, each course being considered separately and being governed by the intent deducible from the entire instrument, and separate parts being viewed in the light of other parts, if the same can be done consistently with the rules of law. 13 Cyc., 605.

The rule for determining what property has been conveyed by a deed is formulated as follows, in 13 Cyc., 626:

"The intention of the parties as apparent in a deed should generally control in determining the property conveyed thereby. But if the intent is not apparent from the deed resort may be had to the general rules of construction.

"Where the words used in the description in a deed are uncertain or ambiguous and the parties have by their

acts given a practical construction thereto the construction so put upon the deed by them may be resorted to, to aid in ascertaining their intention.

"The entire description in a deed should be considered in determining the identity of the land conveyed. Clauses inserted in a deed should be regarded as inserted for a purpose and should be given a meaning that will aid the description. Every part of a deed ought if possible to take effect and every word to operate." See Trimble v. Ward, 14 B. Mon., 8; Beatty v. Dozier, 17 Ky. Law Rep., 1275, 34 S. W., 524.

Where the description of the property intended to be conveyed is ambiguous, the identity of such property must be gathered from the intention of the parties, as shown by the instrument itself and the accompanying circumstances, such as those surrounding and connected with the parties and the land, at the time. Bowe v. Richmond, 33 Ky. Law Rep., 173, 109 S. W., 359; Clark v. Northern Coal Company, 33 Ky. Law Rep., 1047, 112 S. W., 629; Tanner v. Ellis, 127 S. W., 995; Crews v. Glasscock, 32 Ky. Law Rep., 913, 107 S. W., 237; Jones v. American Association, 120 Ky., 413; Hall v. Wright, 121 Ky., 16; Virginia Iron, Coal & Coke Company v. Dye, 146 Ky., 519.

Furthermore, in case of an ambiguity in a deed, or where it admits of two constructions, the rule is that it will be construed most strongly against the grantor, or most favorably to the grantee. In 13 Cyc., 631, it is said:

"In determining the effect of a general clause or recital which may operate to extend a grant, such a construction should be given as will if possible carry into effect every part of the deed. Where the construction, however, is doubtful, the instrument should be construed against the grantor. And a particular description which is clear and explicit and is a complete identification of the property intended to be conveyed will not be varied or enlarged by a more general and less definite description, as in such a case the former will be considered as expressing the intent of the parties rather than the latter. A particular description may, however, yield to a general description where the former is defective; where the grant is made certain under the general description and is less than under the particular; or where there is a clear intent to have the general control."

Applying these well established rules to the deed before us we have little difficulty in arriving at a satisfactory conclusion.

A large amount of proof has been taken for the purpose of showing the relative locations of the three hundred acre tract and the fifty acre survey of May 29, 1855. Two very intelligent surveyors, of high qualifications and great experience, have testified at great length, and each has furnished a plat showing the conclusions he has reached. It is substantially conceded that the description of the three hundred acre tract in so far as it carries the boundary "to a locust tree near the head of the Oatfield Branch on the top of said ridge, T. J. Ingram's corner," is substantially correct. That corner has been located and identified by a large locust tree now standing there. But when it is attempted to run the next course, which reads "thence across the head of the Oatfield Branch with said M. F. Ingram's line to the Crank Branch gap," it is admitted by all the parties concerned that it is impossible to run that line with any line of said M. F. Ingram. The appellants would run that line southwestwardly in order to reach one of M. F. Ingram's lines, and thence southwardly to Crank Branch gap. This description would wholly exclude the fifty acre survey of May 29, 1855, from the three hundred acres sold to Centers and William H. Ingram. On the other hand, appellees would run the line in question from the large locust, southeastwardly to a hickory and Spanish oak, admitted to be in one of M. F. Ingram's lines, and in this way the fifty acre survey of May 29, 1855, would be embraced within the three hundred acre tract.

Furthermore, in platting the fifty acre survey appellants' witness, by changing the second course from north 23 west, 50 poles, to north 72 west 240 poles, and by supplying another line of 237 poles in the boundary succeeds in closing the boundary; but by following the courses and distances given in the deed the boundary fails to close by three-fourths of a mile. The fifty acre survey as thus platted contains one hundred and eighty-five acres, the larger portion thereof lying outside of the boundary of the three hundred acre tract.

Most of the corners have been lost beyond identification. There are at least two identified corners, however, in addition to the large locust corner above referred to, which play an important part in the boundary of this fifty acre survey. They consist of the hickory and

Spanish oak corner to Moses F. Ingram and William F. Collins, and a hickory and maple corner in the same line. By commencing at the hickory and Spanish oak corner and reversing the calls and supplying the lost corners in that way, appellees produce a boundary which includes the fifty acre tract in question. None of these results are, however, entirely satisfactory, for the reason above given, that any course after leaving the large locust tree near the head of the Oatfield Branch on the top of the ridge, is mere guesswork. Strong arguments have been made in support of the courses contended for by either side, but these wholly inconsistent courses and lines render both of them of little value.

We must, therefore, fall back upon the rule that where the particular description is so doubtful as to be unintelligible, the general description must be called to its assistance and given its full meaning; and in doing this it is competent to take into consideration the acts of the parties under the conveyances. In the case at bar the draughtsman of this inartificial deed evidently was aware of the fact that his particular description might not be sufficient to convey all the lands of Moses F. Ingram; and for the purpose of aiding his particular description he added the general description, certifying that the "above described land and boundary contains * * * one fifty acre survey in his name bearing date the 29th of May, 1855," and the other surveys therein mentioned. Under that deed Powell Centers and William H. Ingram and their grantees held undisturbed and unquestioned possession of this fifty acre tract for about thirty-five years, and during eleven years of that time Moses F. Ingram lived in the neighborhood and upon rented land.

It has been shown that upon one occasion, as early perhaps as 1866 or 1868, Moses F. Ingram said in the presence of his son, Marcus D. Ingram, that he still owned a tract of land in this neighborhood. And it is further shown by the witness Money, who is now an old man over eighty years of age, that Moses F. Ingram once said to the witness that he still owned a tract of land in that neighborhood which he would keep as a "nest egg" in case he ever returned there to live. We give little weight, however, to these general expressions, in view of the conduct of Moses F. Ingram throughout the remainder of his lifetime. Moreover, we are of opinion that the deed of 1877 to Centers and William H.

Ingram, under the rules of construction above laid down, conveyed the fifty acres in question, thus rendering the statements of Moses F. Ingram ineffectual, even conceding they were made as claimed.

Judgment affirmed.