Harry D. POLIS and Mary Polis, Appellants

v.

UNKNOWN HEIRS OF JESSIE C. BLAIR aka Jessie Blair aka J. C. Blair; Unknown Heirs of Ina Adams; Unknown Heirs of Buster Blair; Letcher County Judge Executive, Jim Ward; and Glenda Gardner, Appellees

NO. 2014–CA–000306–MR

Court of Appeals of Kentucky.

RENDERED: APRIL 15, 2016; 10:00 A.M.

BRIEFS FOR APPELLANT: Darrell Hall, Whitesburg, Kentucky

BRIEF FOR APPELLEES, UNKNOWN HEIRS OF JESSIE C. BLAIR AKA JESSIE BLAIR AKA J.C. BLAIR; UNKNOWN HEIRS OF INA ADAMS; UNKNOWN HEIRS OF BUSTER BLAIR; LETCHER COUNTY JUDGE EXECUTIVE, JIM WARD: No brief filed.

BRIEF FOR APPELLEE, GLENDA GARDNER: Gene Smallwood, Jr., Whitesburg, Kentucky

BEFORE: COMBS, NICKELL, AND TAYLOR, JUDGES.

*OPINION*

NICKELL, JUDGE:

Harry D. Polis and his wife, Mary Polis (collectively "Polis"), have appealed from the Letcher Circuit Court's October 31, 2013, judgment and its subsequent January 24, 2014, amended judgment, which found Polis held no ownership interest in a disputed parcel of real estate located in or near the community of Jeremiah, Letcher County, Kentucky, and dismissing a civil action seeking a judicial sale of the disputed lands. Polis also contests the trial court's decision to permit post-judgment intervention by a third-party who had not been named in the initiating complaint. Following a careful review, we affirm.

By deed dated January 3, 1939, Jessie C. Blair and his wife, Alice Blair (collectively "Blair") purchased approximately ten acres of land from Watson Combs. The property conveyed by this deed was described as follows:

> Lying in Letcher County, on waters of Rockhouse Creek, better known as part of the late W.R. Combs farm. Number of Part 8-A 8.

The source of title for the property was listed as a Commissioner's Deed dated March 1, 1937, wherein two parcels of property, one referenced as Tract No. 8 and the other as Tract No. 8-A, were conveyed to Watson Combs. The Commissioner's Deed included metes and bounds descriptions of the two tracts.

On April 2, 1940, Blair purchased an adjoining parcel of property containing 1.44 acres from Maggie Combs Jent and her husband, Thomas Jent. This parcel was outlined in a metes and bounds description in the deed as follows:

> Beginning on a rock marked X on the south side of the Branch also being the corner tracts Nos. 5-A, 6-A, 8-A, S 5 20 113.8 feet to a stake; S 15 24 W 86.1 feet to a stake, a corner to Tract No. 4-A; S 36 25 E 201.7 feet to a stake on west side of right of way; thence with west edge of right-of-way 365 feet to a stake at drain on west edge of right-of-way a corner to tract No. 8-A; S 86 35 W 205.6 feet to a nail in root; N 53 13 W 160.7 feet to the beginning, containing 1.44 acres.

Blair executed a deed to Otis Adams and his wife, Ina Adams, dated November 2, 1946, of record in Deed Book 120, Page 41, Letcher County Court Clerk's Office, conveying the following described property:

> Certain piece of land in Letcher County on the Waters of Rockhouse Creek better known as part of the W.R. Combs farm Number of part 8 A 8., and a certain piece of land described as follows: Beginning on a rock marked × on the south side of the branch also being the corner of tract Nos. 5–A, 6–A, 8–A, S–A 20 113.8 feet to a stake; S 15 24 W 86.1 feet to a stake, a corner to Tract No. 4 A; S 36 25 E 201.7 feet to a stake on west side of right of way; thence with west edge of right of way 365 feet to a stake at drain on west edge of right of way a corner to tract No. 8–A; S 86 35 W 205.6 feet to a nail in root N 53 13 W 160.7 feet to the beginning, containing 1.44 acres.

Over the next thirteen years, a series of transactions related to the subject property were undertaken; all appear related to Otis's evolving marital status. Ultimately, by deed dated September 18, 1959, Otis became the sole owner of the property described in the deed from Blair. Otis retained the property until his death. Unfortunately, it appears Otis was saddled with a crippling debt load at his death, and the Letcher District Court ordered the subject property sold by the Master Commissioner to retire Otis's debts.[1] Following the court-ordered sale, the Master Commissioner executed a deed in favor of Glenda Gardner[2] on July 20, 2012, conveying the following described property:

A certain place of land in Letcher County on the waters of Rockhouse. Creek, better known as the W.R. Combs farm, part of number 8A8, and a certain piece of land described as follows:

Beginning on a rock marked "x" on the South side of the branch, also being the corner of tracts numbers 5–A, 6–A, S–A, 20, 113.8 feet to a stake; S 15 24 W 86.41 feet to a stake, a corner to tract No. 4 A; S 36 25 E 201.7 feet to a stake on the West side of right-of-way; thence with West edge of right-of-way 365 feet to a stake at drain on West edge of right-of-way a corner to tract No. 8–A; S 86 35 W 205.6 feet to a nail in root; N 53 13 W 160.7 feet to the beginning. Containing 1.44 acres, as shown by plat of Riley Combs estate, recorded in Plat Book No. 1, page 3, (back) records of the Letcher County Clerk's Office.

Approximately one month later, on August 20, 2012, Polis instituted the instant action in Letcher Circuit Court seeking a judicial sale of property owned by the heirs of Jessie Blair. In the complaint, Polis contended that at death, Blair owned the property known as Tract No. 8 and Tract No. 8–A pursuant to the deed from Combs dated January 3, 1939, as more particularly described in the Commissioner's Deed conveying such property to Combs on or about March 1, 1937. Polis contended he was an heir to Blair and was entitled to have the property sold and the proceeds divided among the remaining heirs, whoever they be. Although Gardner was not named in the complaint, Polis specifically stated the complaint did not apply to the property conveyed by Blair to Adams on November 2, 1946, as more

---

1. The record of the District Court proceedings is not before us. Reference to actions occurring in that matter is based solely upon assertions made before the Letcher Circuit Court in the instant matter and which appear in the certified record on appeal.

2. It appears the high bidder at the Master Commissioner's sale was actually Gardner's son, Jarrod Breeding, who directed the deed to be made to Gardner as grantee.

particularly described in Deed Book 120, page 41, which was ultimately the property purchased by Gardner from the Master Commissioner the previous month.

Upon receiving no response from the unknown heirs, Polis moved for and was granted a default judgment and order of sale on December 4, 2012. For unknown reasons, processing by the Master Commissioner for the judicial sale was inordinately slow, prompting Polis on January 28, 2013, to move for a status conference to ascertain the reason for the delay. Shortly thereafter, Gardner moved to intervene in the action claiming an ownership interest in the subject property.[3] Gardner indicated she had only become aware of the pending lawsuit due to a letter from Polis's attorney to her attorney dated January 21, 2013, advising her of same. Polis opposed the motion, arguing Gardner's intervention was untimely as a judgment had been entered, the judgment specifically excluded the property being claimed by Gardner, and no basis for overturning the judgment had been advanced. Polis contended Gardner bought only the 1.44 acre tract in the Master Commissioner's sale, not Tract 8 or Tract 8–A of the W.R. Combs Farm, which were the subjects of the instant suit. Following a brief hearing, the trial court permitted Gardner to intervene by order entered on April 24, 2013, and further held its earlier default judgment and order of sale in abeyance pending further proceedings.

A final hearing was conducted on September 24, 2013. Polis called two witnesses and Gardner called none. The trial court entered an order setting forth its rulings on October 31, 2014, and on motion of Polis, an amended judgment was entered on January 24, 2014. In that final order, the trial court determined the ultimate issue to be decided centered on what property was conveyed in the November 2, 1946, deed from Blair to Adams of record in Deed Book 120, page 41, Letcher County Court Clerk's Office. If Tract 8 and Tract 8–A were included in that conveyance, it would be subject to sale by the Letcher District Court as part of the Otis Adams estate—the basis of Gardner's claim by virtue of the 2012 Master Commissioner's sale. If the deed did not convey those two tracts, they would belong to Blair's heirs as contended by Polis. The trial court determined the deeds at issue contained typographical differences in the property descriptions in relation to the tracts making up the ten-acre parcel, but found it "clear that the 1946 deed intended to describe and convey all of the property J.C. Blair and wife received in the 1939 deed." Based on this clear intent, the trial court concluded the description of "Number of Part 8 A 8" would not have been accidentally included and, to give meaning to the words included in the deeds, found the 1939 deed intended to convey parcels 8 and 8–A to Blair, and the 1946 deed likewise intended to include both tracts. According to the trial court, the failure to include a comma or the word "and" between the two tracts was merely a mistake. Therefore, the trial court ruled Polis's claims to any ownership interest in parcels 8 and 8–A as an heir of Blair were without merit as Blair ceased to hold any interest in the property following execution of the 1946 deed to Adams. Finally, the court noted any problems related to the property description or what property was rightfully sold to Gardner remained

---

3. Breeding also moved to intervene in the action. Although Breeding engaged in a short period of motion practice, no final resolution of any of his motions appears in the record. We can only speculate this is based on his lack of being a record title holder to any of the lands in dispute.

under the jurisdiction of the Letcher District Court. This appeal followed.

Polis now raises two allegations of error in seeking reversal. First, Polis argues the trial court erroneously permitted Gardner's untimely intervention in this action. Second, Polis contends the trial court impermissibly increased the boundaries of the lands conveyed based on a perceived typographical error. We disagree with each of these contentions.

■ Polis first alleges Gardner's motion to intervene was untimely and the trial court erred in not so finding. Polis further takes the trial court to task for failing to make any findings under CR [4] 24.01 as to timeliness. Intervention as a matter of right is permitted:

> [u]pon **timely** application ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties....

■ CR 24.01(1) (emphasis added). Thus, intervention is permitted only upon a timely motion. *Id.; see Carter v. Smith,* 170 S.W.3d 402, 407–09 (Ky.App.2004).

■ Although post-judgment intervention is not strictly forbidden, it is widely within the discretion of the circuit judge. *Arnold v. Commonwealth,* 62 S.W.3d 366, 369 (Ky.2001). Timeliness is a question of fact, which generally should be left to the circuit court. *Ambassador College v. Combs,* 636 S.W.2d 305, 307 (Ky.1982) (citing *Dairyland Ins. Co. v. Clark,* 476 S.W.2d 202, 203 (Ky.1972)). A "party wishing to intervene after final judgment has a 'special burden' to justify the untimeliness." *Arnold,* 62 S.W.3d at 369 (quoting *Monticello Electric Plant Bd. v. Board of Educ. of Wayne County,* 310 S.W.2d 272, 274 (Ky.1958)). We review a trial court's timeliness decision under the abuse of discretion standard. *Carter,* 170 S.W.3d at 408.

Here, Polis argues Gardner failed to meet the required "special burden" of justifying her intervention following the trial court's entry of default judgment. Polis relies on *Pearman v. Schlaak,* 575 S.W.2d 462 (Ky.1978), as authority for the position that a non-party's ability to intervene is cut off by entry of a judgment and urges application of that holding to the instant matter. However, *Pearman* is clearly distinguishable and thus inapplicable.

In *Pearman,* a property owner sought a zoning change to permit construction of a multi-family dwelling. Although the planning commission recommended the change, the petition was denied following a public hearing before the city council. The property owner filed suit challenging the city council's decision as arbitrary and capricious; the trial court agreed and ordered the city council to permit the zoning change. Approximately nine days later, several neighboring property owners, who were not named in the original action, moved to intervene for purposes of appealing the circuit court's decision which they believed was adverse to their interests. Our Supreme Court ultimately determined the neighboring property owners' attempt at intervention was untimely. Unlike the instant matter, the neighbors in *Pearman* were fully aware of and indeed attended the administrative proceedings regarding the proposed zoning change. They were represented by counsel, never denied they had actual knowledge of the pending action, and offered no reason for their delay

---

4.   Kentucky Rules of Civil Procedure.

in seeking to intervene. The Supreme Court concluded the neighbors had been "content to sit under their own 'vine' and let the Radcliff City Council carry the burden." *Id.*, 575 S.W.2d at 463. Their interests having been adequately protected by the defense made on behalf of the City of Radcliff, no special reason justifying intervention existed. No such circumstances are present in this matter.

Although Polis was aware Gardner claimed an interest in the subject property prior to filing this action, she was not named a party nor notified of the pending proceedings in any way until *after* a default judgment had been rendered. Gardner's interests were not adequately protected by any of the defendants who were identified only as "unknown" heirs, were served by warning order attorney, and none of which offered any defense to the allegations raised in Polis's complaint. Upon learning of the existence of the action, Gardner moved to intervene within a very brief time period. Thus, it cannot be said she rested on her laurels while the suit progressed as did the neighbors in *Pearman.*

■ "Acting timely movant has a right to intervene when it claims an interest relating to property which is the subject of the primary action and when the disposition of the action may impede its ability to protect that interest." *Ambassador College*, 636 S.W.2d at 307. Also, permissive intervention is appropriate when, acting timely, a movant's claim and the main action have common questions of law or fact. CR 24.02. Under both of these scenarios, Gardner's claims come within the terms of CR 24.01 and CR 24.02.

The claims of ownership raised by Polis in the main action, and Gardner in seeking intervention, rest on common questions of law and fact—what property was conveyed by Blair to Adams in 1946. Resolution of either party's claim—by necessity—resolves the claim of the other, as the two are mutually exclusive. While Polis encouraged the trial court to exclude Gardner and proceed with the judicial sale of the contested property, the trial court concluded doing so would serve only to perpetuate the dispute and potentially place an unknowing innocent purchaser in an uncertain legal quagmire. In the interest of judicial economy, the trial court determined intervention was appropriate.

■ Encompassed in this decision is an implicit finding of timeliness. Although an explicit finding on the record relating to timeliness may constitute a better practice, CR 24.01 does not overtly require such a finding, contrary to Polis's contention. Further, because the trial court's ruling on timeliness does not constitute a final judgment, the requirements under CR 52.01 to make factual and legal findings are not implicated. Even were they required, the failure to make a finding on an essential fact is not grounds for reversal unless brought to the attention of the trial court. *See* CR 52.04. Polis does not indicate the alleged failure was mentioned to the trial court and we will not search the record to make argument for a party or find support for its contention. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky.App. 2005) (citations omitted). Thus, for all these reasons and under the facts as presented, we discern no abuse of discretion in the trial court's assessment of the case and find no error in the trial court's decision to grant Gardner's motion to intervene.

■ Finally, Polis argues the trial court impermissibly enlarged the boundaries of the property conveyed by the 1946 deed based on its finding of a typographical error. Polis offers little in the way of argument or authority in support of this

position, save a single citation [5] to a case with dubious applicability to the issue presented here.

Under even a cursory review of the deeds contained in the record, it seems obvious that Blair intended to convey to Adams the property he received from Combs in 1939, rather than some fictitious parcel to which he held no record title. Further, the Blair-to-Adams conveyance described property received from two different sources at two distinct times and combined for the first time in the 1946 deed, thereby militating against Polis's position that only that smaller tract was intended to be conveyed to Adams. To follow the path laid down by Polis would require constructing the 1946 deed in a way to eliminate and ignore plain language contained therein. This we cannot do.

Over a century ago, a basic tenet of deed construction was discussed which remains applicable to this day in cases such as the one presently at bar. "The entire description in a deed should be considered in determining the identity of the land conveyed. Clauses inserted in a deed should be regarded as inserted for a purpose, and should be given a meaning that will aid the description. Every part of a deed ought, if possible, to take effect and every word to operate." *Bain v. Tye*, 160 Ky. 408, 169 S.W. 843, 845 (1914) (citation and internal quotation marks omitted). A more modern expression of the same rule was expressed in *Dennis v. Bird*, 941 S.W.2d 486, 488 (Ky.App.1997).

Here, the trial court clearly followed this ancient directive to make sense of what could otherwise be seen as nonsensical. In so doing, the trial court simply did not increase the boundaries of the tract at

issue, but rather merely clarified the language so as to give meaning to the entire contents of the conveyance. Such action was patently proper. There was no error.

For the foregoing reasons, the judgment of the Letcher Circuit Court is affirmed.

ALL CONCUR.

---

5. Polis references *Jones v. Johnson*, 305 Ky. 525, 204 S.W.2d 961 (1947), a case which holds a grantor may not convey more property than was conveyed to him by his predecessor in interest. Here, there is no question Blair owned Tracts 8 and 8-A at the time of conveyance to Adams.