RENDERED: JUNE 16, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0522-MR

MICHAEL HONAKER AND NENA
HONAKER                                                          APPELLANTS


                      APPEAL FROM CLARK CIRCUIT COURT
v.                   HONORABLE COLE ADAMS MAIER, JUDGE
                          ACTION NO. 21-CI-00262


CITY OF WINCHESTER,                                               APPELLEES
KENTUCKY AND WINCHESTER
MUNICIPAL UTILITIES
COMMISSION


OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, LAMBERT, AND McNEILL, JUDGES.

EASTON, JUDGE: The Appellants, Michael and Nena Honaker (the "Honakers"),

appeal Orders made final by the Clark Circuit Court granting partial summary

judgment to the Appellees, the City of Winchester ("City") and Winchester

Municipal Utilities Commission ("WMU"). The City and WMU filed a Petition

for a Declaration of Rights regarding two easements for waterlines and related facilities on and near the Honakers' property. Upon review, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The Honakers own property located at 5010 Old Boonesboro Road in Clark County ("Honaker Property"). The City is a municipality in Clark County. WMU is an entity created to provide public utilities, specifically water, to residents of Clark County. WMU's predecessor was the Winchester Water Works Company ("WWWC"). The City acquired all of WWWC's assets in 1945. Sometime before 1900, WWWC constructed a water treatment plant and a system of water distribution pipelines to provide water services for the residents of Clark County.

Between 1921 and 1923, WWWC constructed a ten inch fresh waterline ("10 Inch Fresh Waterline") which ran along and then across Boonesboro Turnpike (now Old Boonesboro Road) and to the WWWC's water treatment plant. To permit the construction of the 10 Inch Fresh Waterline, WWWC entered into an agreement with the State Highway Commission. This agreement, dated June 21, 1922, granted WWWC the following:

> [A] perpetual right of way and easement in, on and over that portion of the Boonesboro Turnpike Road, in Clark County, Kentucky, from a point in said road at the entrance to the second party's property, about 4 miles from Winchester; thence along the margin of said road to a point in said road at the intersection of the Hampton-Ford Turnpike Road in said county[.]

The agreement stipulated this easement ("10 Inch Fresh Waterline Easement") was granted for the purpose of constructing and maintaining waterlines. This agreement was duly recorded in the Clark County Clerk's Office.

In 1931, the Honakers' predecessors-in-title (the "Castle family"), conveyed a portion of their property to the Commonwealth of Kentucky through the State Highway Commission for the purpose of relocating a section of what is now Old Boonesboro Road so that a curve in the original Boonesboro Turnpike Road could be straightened. As a result of this easement and subsequent road construction, the 10 Inch Fresh Waterline was relocated from the western boundary of Boonesboro Turnpike Road (the opposite side from the now Honaker property) to the eastern boundary of the road. A section of this easement appears on a detailed drawing as running on the Honaker property, but the easement and waterline appear to leave the Honaker Property less than halfway along its frontage with the road. The deed for this conveyance also was recorded in the Clark County Clerk's Office.

In 1959, the Castle family conveyed to the City a thirty foot wide easement and right of way ("30 Foot Raw Waterline Easement") across the Honaker Property to construct and maintain an eighteen inch raw waterline ("18 Inch Raw Waterline"). The 30 Foot Raw Waterline Easement also was recorded in the Clark County Clerk's Office. The City and WMU constructed the 18 Inch Raw

Waterline in 1959 and have been maintaining the waterline ever since. In 1997, the Castle family reiterated the existence of the 30 Foot Raw Waterline Easement by recording a plat in the Clark County Clerk's Office, memorializing the 30 foot width of the easement within which the 18 Inch Raw Waterline is located.

In 1992, the Castle family granted another easement ("Adjoining Owners Easement") across the now Honaker Property to install waterlines to service properties to the east of the property across the new Boonesboro Road (Highway 627). This line services three new residences on the other side of the new Boonesboro Road. The Adjoining Owners Easement depicts the 30 Foot Raw Waterline Easement as they intersect. The Adjoining Owners Easement was also recorded in the Clark County Clerk's Office.

Pursuant to the Adjoining Owners Easement, WMU installed three water meters within the area of the 10 Inch Fresh Waterline Easement with taps to the 10 Inch Fresh Waterline to service the residences of three customers east of the Honaker Property and across the new Boonesboro Road. These meters have been continually utilized since the 1990s.

The Honakers acquired their property relatively recently in 2019. This property is clearly part of the former Castle property as may be seen from the recorded plats and deeds. With no apparent forethought about the water lines, the

Honakers employed contractors to grade a portion of their property.  While grading the property, appurtenances to the 18 Inch Raw Waterline were damaged.

The Honakers then discovered the Adjoining Owners Easement across their property.  The Honakers demanded that WMU remove the water meters and waterlines from the Honaker Property.  WMU refused to do so.  The Honakers then unilaterally relocated the waterline access servicing the three residences on the east side of Boonesboro Road to the southern end of the Honaker Property.  The Honakers asked WMU to install three new water meters to service the newly installed waterlines.  Faced with this *fait accompli*, WMU agreed.  But then the Honakers refused to allow WMU to remove the inactive meters and meter boxes which had serviced the waterlines within the Adjoining Owners Easement.

In the face of the numerous recorded easements, the Honakers inexplicably denied the existence of any easements on their property.  They demanded WMU remove all waterlines allowed by the previous owners.  The Honakers sent a "cease-and-desist" letter to WMU, threatening criminal prosecution if employees of WMU entered upon the Honaker Property.  The Honakers referred WMU to Kentucky Revised Statute ("KRS") 503.080.  This may be seen as a veiled threat by the Honakers that they would feel justified in using physical force to resist any WMU presence on their property.

The City and WMU filed a circuit court action for a declaration of rights to establish their rights to the 10 Inch Fresh Waterline Easement with its extensions and the 30 Foot Raw Waterline Easement. The City and WMU filed a Motion for Temporary Injunction to prevent the Honakers from constructing a driveway that would potentially damage the 10 Inch Fresh Waterline, or otherwise inhibiting WMU from maintaining the waterlines and related facilities during the pendency of the action. The circuit court granted the Temporary Injunction.

The City and WMU filed a Motion for Partial Summary Judgment. The Motion was granted. In multiple Orders, the circuit court observed the following:

> (1) WMU has a valid easement for the 10 Inch Fresh Waterline, and that WMU may utilize fifteen feet on either side of the 10 Inch Fresh Waterline to install and maintain it;
>
> (2) WMU has the right to come across the Honaker Property at reasonable locations;
>
> (3) except in cases of emergency, WMU shall provide reasonable notice to the Honakers if WMU intends to do work in the easement area on the Honaker Property;
>
> (4) after work is completed, WMU and its agents shall be required to restore the Honaker Property to its previous condition to the extent reasonably possible;
>
> (5) if the Honakers act to grade and pave any areas that contain the 10 Inch Fresh Waterline, they must not excavate in excess of three feet above the waterline and

not allow equipment or materials weighing in excess of thirty-three tons;

(6) WMU shall be permitted to remove the three inactive water meters which previously served the properties on the east side of Boonesboro Road, provided that WMU provides reasonable notice to the Honakers and that WMU restores the property to its previous condition once work is done; and

(7) WMU has a valid 30 Foot Raw Waterline Easement across the Honaker Property, allowing WMU to use a fifteen-foot strip of land on either side of the 30 Foot Raw Waterline, provided that WMU provides reasonable notice to the Honakers and that WMU restores the property to its previous condition once work is done.

This appeal followed.

## STANDARD OF REVIEW

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). Summary judgment is only proper when "it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). In ruling on a motion for summary judgment, the Court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Id.* A party opposing a summary judgment

motion cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must present affirmative evidence to defeat a properly supported motion for summary judgment. *Id.* at 481. In *Steelvest* the word "'impossible' is used in a practical sense, not in an absolute sense." *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992).

## ARGUMENT

"Easements are not favored and the party claiming the right to an easement bears the burden of establishing all the requirements for recognizing the easement." *Carroll v. Meredith*, 59 S.W.3d 484, 489-90 (Ky. App. 2001). An easement is generally created by express written grant, implication, prescription, or estoppel. *Id*. at 489.

The rights created by an easement depend upon its classification. *Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky. 2012). An express easement is created by a written grant with the formalities of a deed. *Id.* An easement confers a right upon the dominant owner (the holder of the easement) to enjoy the right to enter the servient owner's (the owner of the land) property. *Dukes v. Links*, 315 S.W.3d 712, 716 (Ky. App. 2010). The rights and duties of the dominant and servient owner are correlative, and neither may unreasonably exercise their rights to the injury of the other. *Blair v. City of Pikeville*, 384 S.W.2d 65, 68 (Ky. 1964).

This case presents no genuine issues as to any material fact. It is governed by documents, specifically deeds, the contents of which cannot be disputed. While some may argue about what they mean, that presents legal questions, not disputed facts, and these legal questions are properly answered in a declaration of rights action. Another undisputed fact of significance is the continuous existence of these lines where they have been placed for many decades.

The Honakers argue the City and WMU never acquired a valid easement for the 10 Inch Fresh Waterline. The 10 Inch Fresh Waterline Easement was conveyed by the State Highway Commission to WWWC in 1922. This easement was properly recorded in the Clark County Clerk's Office, giving the public notice thereof. WMU acquired WWWC's rights to the 10 Inch Fresh Waterline Easement. By virtue of the 1922 deed and the subsequent deeds in the chain of title, the City and WMU have a valid 10 Inch Fresh Waterline Easement.

The Honakers argue the 10 Inch Fresh Waterline Easement is invalid because the State Highway Commission had no interest to convey to WWWC in 1922. The Honakers assert an individual named Tandy Quisenberry conveyed a right of way over part of his large farm to the Winchester and Kentucky River Turnpike Company back in 1857. They argue the purpose of this right of way was to construct and repair the Winchester and Kentucky River Turnpike. This turnpike was the predecessor to Old Boonesboro Road.

The Honakers insist this right of way expired on the deaths of Tandy Quisenberry (in 1869) and his wife (in 1872). According to the Honakers, the Winchester and Kentucky River Turnpike Company sold no rights regarding the Turnpike to the Clark County Fiscal Court by a conveyance in 1898, because they had no rights to sell. The Honakers also assert there is no evidence that the Clark County Fiscal Court conveyed this property to the State Highway Commission before conveyed back to them in 1922. This overlooks the recitations in the deeds mentioned, against which the Honakers offer no contrary documentation other than the ancient Quisenberry grant.

The ostensible conveyance by Tandy Quisenberry with its reported limitations for what would in effect be an inexplicable temporary turnpike is not supported by the record. The Honakers have included as exhibits documents purportedly showing this conveyance. However, no sworn proof has been proffered to authenticate that exhibit. Even if we accept the unauthenticated documents, there is no indication that Tandy Quisenberry owned the land where the 10 Inch Fresh Waterline Easement is currently located on the Honakers' property. The Honakers' provide no clear description of where Tandy Quisenberry's property was in location to the 10 Inch Fresh Waterline Easement. The turnpike constructed ran for miles and crossed any number of properties.

The Honakers offer no documentation to explain how the turnpike continued for years after the deaths of the Quisenberrys. There is no offer of proof in response to the well-supported summary judgment motion for any claim by the Quisenberry heirs to reclaim the property. The turnpike continued to be maintained for decades well after it became part of the state highway system.

Ultimately, the discussion over the Quisenberry conveyance is academic at best. With respect to the extent the 10 Inch Fresh Waterline is on the Honaker Property, the express easement granted by the Honakers' predecessors in title (the Castles) render moot the title to the roadway.

Even if the Quisenberry grant is in the chain of the Honakers' property, this historical segue into how turnpikes were built over a hundred and fifty years ago ignores the reality of the continuous placement of at least one of the lines for over 100 years with later deeds clearly granting the continuing easement to the extent any part of the lines is on the Honaker Property. The Honakers hyperbolically describe their predicament as the "longest government trespass in history." *Honaker Brief* at 10. On the contrary, even without the clear record of the easements granted, the existence of the 10 Inch Fresh Waterline and its maintenance illustrate the right to the easement by prescription if nothing else. *See Farmer v. Kentucky Utilities Company*, 642 S.W.2d 579 (Ky. 1984)

-11-

(recognizing a utility company may obtain title to an easement by prescription, which includes secondary rights to access for maintenance).

The Honakers similarly argue the City and WMU do not have a 30 Foot Raw Waterline Easement to access the 18 Inch Raw Waterline. They argue the language contained in the 1959 30 Foot Raw Waterline Easement states the width of the easement is "temporary." It is temporary, but the Honakers misapply the term. The Honakers selectively quote the 30 Foot Raw Waterline Easement, in part, as follows:

> It is understood and agreed that the strip of land hereinabove referred to, being 30 feet in width, is a temporary easement only for the purpose of construction and laying said pipe. A permanent easement is granted over said land for the strip of land actually occupied by said pipe line.

In other words, the Honakers argue the 30 Foot Raw Waterline Easement is only eighteen inches in width. The Honakers, however, omit the following sentence from the 30 Foot Raw Waterline Easement:

> A temporary easement is hereby granted over the above described land for the purposes of maintaining, inspecting, or repairing said line for the period of time actually needed for such operation, but no longer, the temporary easement in no event to exceed an area of 30 foot in width, or 15 feet on either side of said water line.

In the interpretation of deeds, the intention of the parties should be effectuated. *Bain v. Tye*, 169 S.W. 843, 844 (Ky. 1914). *Bain* also states:

-12-

> [E]ffect and meaning must be given to every part of a deed, each course being considered separately and being governed by the intent deducible from the entire instrument, and separate parts being viewed in the light of other parts, if the same can be done consistently with the rules of law.

*Id.*

Taking the easement language quoted by the Honakers and the subsequent sentence into consideration, the intent of the parties to the easement is clear that a "temporary easement" exists until the end of operations for the 18 Inch Raw Waterline. Frankly, the Honakers' contention to the contrary is absurd. They suggest that once the line is in place the easement shrinks to the dimensions of the line. It can never be serviced. It could not even be removed without a trespass.

The temporary easement is just that. When needed for the purpose of maintaining the line, periodic yet temporary access to the line is allowed to be up to thirty feet in width. There is no issue of material fact as to the width of the 30 Foot Raw Waterline Easement. Therefore, the City and WMU have a valid 30 Foot Raw Waterline Easement to access the 18 Inch Raw Waterline.

The Honakers next argue the circuit court unilaterally determined the requirements for paving areas within the 10 Inch Fresh Waterline Easement. The circuit court held that, if the Honakers act to grade and pave any areas that contain the 10 Inch Fresh Waterline, they must not excavate more than three feet above the waterline and not allow equipment or materials weighing more than thirty-three

-13-

tons, which could damage the water line.  The Honakers assert there is no legal rationale for the circuit court to make this determination.

This argument ignores the dominant nature of the easement.  For its granted purpose, the placement and maintenance of the lines are paramount to the rights of the landowner.  The landowner's use of the dirt above and around the lines is servient or secondary to the water line.  The circuit court correctly followed this law in this declaration of rights action and properly declared the rights of the parties in the circumstances presented.

In their Motion for Partial Summary Judgment, the City and WMU requested the circuit court to impose reasonable restrictions on the Honakers' proposed driveway to protect the 10 Inch Fresh Waterline from damage.  Included in the Motion was the affidavit of Kenneth Dryden ("Dryden"), General Manager of WMU.  Dryden stated, "[I]t is reasonable for the Honakers to refrain from excavating above [the 10 Inch Fresh Waterline] any deeper than 3 feet and to not place trucks or equipment or materials on top of said line which weigh greater than 33 tons."  The Honakers provided no alternative proposed restrictions.  The Honakers' Response to the Motion for Partial Summary Judgment did not address the subject of proposed restrictions in paving, so it was reasonable for the circuit court to adopt Dryden's proposed restrictions in their entirety in this context of a

declaration of rights, which proceeding is to be treated as a motion before the court.  *See* KRS 418.050.

Finally, the Honakers argue the circuit court judgment should be reversed as "WMU's own engineers are having a difficult time determining what property has been conveyed to the Honakers."  The Honakers allege this creates an issue of material fact as to whether the Castle family owned the Honaker Property.  WMU did not provide testimony or opinion as to what property the Honakers own.  Further, this contention is a moot point as the circuit court and this Court have determined that the City and WMU have rights to the 10 Inch Fresh Waterline Easement and the 30 Foot Raw Waterline Easement to the extent any part of these lines is on the Honaker property.  If any part of the lines is on another's property, that is none of the Honakers' concern.

We note the position of the Honakers borders on the frivolous.  We decline to consider any sanctions, recognizing this case will remain pending in the circuit court for further proceedings, which may be the more appropriate place for consideration of CR 11 or other sanctions at the conclusion of that litigation.

## CONCLUSION

The Clark Circuit Court's Orders granting partial summary judgment to the City and WMU are AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANTS:

Brian N. Thomas
Winchester, Kentucky

BRIEF FOR APPELLEES:

John H. Rompf, Jr.
Winchester, Kentucky